[No. 40429-0-II.   Division Two.   April 26, 2011.]

DANIEL FISHBURN ET AL., *Appellants*, v. PIERCE COUNTY PLANNING AND LAND SERVICES DEPARTMENT ET AL., *Respondents*.

*David M. von Beck* and *Katie J. Stuvick* (of *Levy von Beck & Associates PS*), for appellants.

*Mark E. Lindquist, Prosecuting Attorney*, and *Ronald L. Williams, Deputy*, and *Matthew R. Wojcik* and *Daniel F. Mullin* (of *Mullin Law Group PLLC*), for respondents.

¶1 VAN DEREN, J. — Daniel and Lori Fishburn[1] appeal the trial court's orders granting summary judgment to the Tacoma-Pierce County Health Department (TPCHD) and the Pierce County Planning and Land Services Department (PALS) and denying the Fishburns' reconsideration motion, claiming that exceptions to the public duty doctrine created duties owed specifically to them by TPCHD and PALS. The Fishburns argue that the public duty doctrine's exceptions impose a duty on TPCHD and PALS arising from the faulty site preparation, installation, and inspection of their home's

---

[1] For clarity, we refer to parties sharing a surname by their first names, intending no disrespect.

septic system during its construction in 2004-05 by Euroway Homes Inc.[2] They also argue that PALS is liable under the public duty doctrine for its actions when the Fishburns tried to repair the failed septic system. We affirm.

## FACTS

¶2 In 1994, Gary and Arlene Petersen began developing land on Lake Tapps's Snag Island in Pierce County. Over several years, the Petersens increased the size and elevation of the lakefront property by dumping fill material dredged from the lake. In 2004, the Petersens sold the undeveloped property to Euroway.

¶3 Between 2004 and 2005, Euroway developed the Snag Island property (property) and built a 4,100 square foot house on the site. Euroway submitted an on-site septic system design application to TPCHD for the property on May 11, 2004. The application referred to soil samples logged in March 2004. TPCHD approved the application on August 26 "[b]ased on the soil samples establishing appropriate soil conditions for on-site septic." Clerk's Papers (CP) at 25. On April 7, 2005, a septic system designer submitted an "[a]s-[b]uilt" septic system certification to TPCHD, stating:

> I hereby certify that the accompanying drawing substantially depicts the on-site sewage disposal system installed at the above-referenced address. I inspected the on-site sewage disposal system prior to backfill and final cover and determined that it appeared to comply with all requirements and restrictions of the approved on-site sewage system design.

CP at 54. TPCHD accepted the as-built plans and certification on April 28.

---

[2] The Fishburns also argue for the first time on appeal that TPCHD's and PALS's "actions in applying their respective regulations and procedures to the Fishburns' [p]roperty constituted a regulatory taking in violation of the [Fishburns]' rights under the Fifth and Fourteenth Amendments to the United States Constitution." Br. of Appellant at 34 (emphasis omitted). Because the Fishburns raise this argument for the first time on appeal, we do not address it. RAP 2.5(a).

¶4  On February 2, 2006, Euroway sold the property to Richard and Joell Bolen.[3] On May 23, 2007, the Fishburns purchased the property for nearly $1.6 million from the Bolens. On October 31, 2007, TPCHD sent a "FIRST NOTICE" to the Fishburns, informing them that "evaluation of the septic system by [TPCHD] was required prior to transfer of ownership. [TPCHD's] records do not indicate that this requirement was met," and that "[t]he purpose of this evaluation is to ensure that the septic system is functioning properly and that it complies with all permitting requirements prior to transfer of ownership." CP at 82. On December 4, TPCHD sent the Fishburns a "SECOND NOTICE" raising the issue that they purchased their property "without a Report of System Status for the septic system." CP at 83.

¶5  The December 4 letter stated, "Our local Land Use Regulation requires the completion of a Report of System Status." CP at 83. The letter also stated that the land use regulation, section 23.6, "has been in effect since January 1, 2003," and that "[t]he Report of System Status is intended to provide assurance that the septic system is working properly and that incomplete records or unpaid fees have been resolved." CP at 83. Additionally, it stated that the Fishburns "must apply within 30 days [of receiving the letter] for a Report of System Status, including an inspection report by a certified service company."[4] CP at 83.

¶6  In fall 2007, Daniel noticed water accumulating on his front lawn. Daniel had over 27 years of construction industry experience and unsuccessfully attempted to solve the water drainage problem by aerating and dethatching the lawn. A few months later, Daniel discovered over two feet of standing water in the crawl space under his house.

---

[3] TPCHD and PALS state that "[t]he Bolens resided on the property until May 17, 2007." Br. of Resp't (TPCHD) at 4; Br. of Resp't (PALS) at 3. The record does not confirm this, but the parties did not dispute this fact at oral argument.

[4] TPCHD and PALS contend that the Fishburns purchased the property without inspection. At oral argument, the Fishburns stated that they had the property inspected before they purchased it. The record does not resolve this disagreement about whether a prepurchase septic system inspection occurred.

He then attempted to install a combination of French drains and dry wells, but he was thwarted by the discovery of soil stabilizer[5] on the property.

¶7 In March 2008, the Fishburns' neighbor, Dave Stinson, showed Daniel photographs taken in 2004 indicating that Euroway excavated the property below Lake Tapps's high water level. He also informed Daniel that Stinson and his wife had written to PALS[6] multiple times between 1994 and 2001 to express their concerns with the property's site conditions. Daniel then discovered holes in the foundation walls and deficient roof water drainage.

¶8 On March 13, PALS contacted Daniel about a complaint it received regarding unpermitted work being done on the property. PALS issued a notice of violation. On March 18, at Daniel's request, a PALS inspector came to the property, and Daniel showed the inspector the property's various deficiencies.

¶9 On March 20, PALS representatives Gordon Aleshire, David Acree, Stephen Widener, Roger Jernegan, and Lorrie Chase met Daniel at his property. Daniel described the property's history and problems and requested a conditional use permit allowing an exemption and an extension for the property's bulkhead.

¶10 On March 26, Aleshire e-mailed Daniel, stating:

> Dan, it appears we have reached an impasse. Lorrie Chase has given you clear guidance on what we require in the way of permits. You need to make application by the times noted in the notices of violations or file a formal appeal.
>
> From this point on I ask that all your communications come to me. I am advising staff not to respond to any more of your e-mails unless directed by and back through me. We have made our determination of what you need to do and feel further debate of the code is not likely to be productive.

---

[5] "[S]oil stabilizer," also referred to as "soil cement," consists of cement and clay and is very difficult to excavate. CP at 122-23.

[6] The Fishburns contend that PALS was the Pierce County agency responsible for inspecting and approving construction on the property.

If you hire a consultant to prepare your application(s), and they request an extension to prepare, I will grant a short extension. If, as your e-mail suggests, you do not intend to apply for permits and do not file an appeal, the violations will follow their normal process.

CP at 169.

¶11 The following day, Daniel filed an appeal of the violation for unpermitted work on the property with PALS. Daniel stated that, while he was at the PALS office, he ran into Chuck Kleeburg, the PALS director, and that Kleeburg advised him not to file the appeal but, rather, to seek a settlement with the county prosecutors. Also, on March 27, Aleshire sent Daniel another e-mail responding to some questions and providing additional information about the appeals process.[7]

¶12 On April 2, a PALS employee visited the property to assess the property's grading. The same day, a stop work order was placed on the property. On April 21, Daniel appealed the stop work order.

¶13 While both appeals were pending, Daniel continued his efforts to remove the water from his house's crawl space. On June 16, engineers recommended to Daniel that the house be moved and raised. In November 2008, an employee from TPCHD visited the property and recommended that Daniel have a septic contractor inspect the septic system. On November 12, a representative from FloHawks Plumbing and Septic conducted a septic drain field dye test. FloHawks's report stated that "dyed liquid came out approx[imately] 1 minute after turning pump on." CP at 221. A short time later, Daniel met with Vergia Seabrook, a TPCHD environmental health specialist. After their meeting, Daniel sent Seabrook an e-mail requesting that a TPCHD staff member visit the property to complete the system inspection within 10 business days.

---

[7] Aleshire's e-mails appear to be responding to an inquiry by Daniel, but the initial communication is not contained in the clerk's papers. The record does not indicate that the Fishburns applied for permits for the conditional use exemption or the bulkhead extension, as directed by Aleshire and Chase.

¶14 Two TPCHD employees visited the property on November 20 and conducted another dye test. TPCHD concluded the septic system was malfunctioning and instructed the Fishburns to contact a septic engineer for design and installation of an approved septic repair. The Fishburns moved out of the house on November 22, "due to the catastrophic failure of the septic system and TPCHD's failure to follow up as promised on its analysis and suggestions for corrective measures for the [p]roperty." CP at 133. On December 2, Daniel met with TPCHD staff to determine a solution to the property's failed septic system, but the parties did not agree on a corrective measure.

¶15 David Lenning, a manager at the Washington State Department of Health, e-mailed Daniel on December 8 to inform him that TPCHD had inspected the property on December 2 and had determined that the sewage system was failing. Daniel had not granted TPCHD access to his property for an inspection on December 2. The Fishburns' property was enclosed by a chain link fence with an electric gate at the driveway.[8] According to Daniel, the inspector gained access by tearing down a portion of the fence. By December, the engineers concluded that the drain field "ha[d] failed or was never functioning" and, because "there [wa]s no other place on the lot to construct a drain field, the house [wa]s basically uninhabitable," as all other possible options were cost prohibitive. CP at 211. Additionally, the engineers found that the septic tank was installed below Lake Tapps's water level and would "continuously fail due to water intrusion." CP at 211.

¶16 Between January 8 and March 11, 2009, TPCHD issued three septic system violation notices to the Fishburns. In May, the Pierce County Assessor-Treasurer's

---

[8] At oral argument, consistent with the Fishburns' reconsideration motion, they asserted that their property had no gate and that the inspector went to the wrong property, making the inspector's conclusions inaccurate or invalid. But Daniel argued that the inspector gained access on December 2, 2008, by tearing down a portion of the fence, thus, it appears that there was some obstruction to the inspector's access, even if not a gate.

Office valued the property at $2,000.[9] On June 3, TPCHD posted a "Do Not Occupy" sign at the property. CP at 136.

¶17 The Fishburns filed their first amended complaint against TPCHD and PALS on October 23, 2009, alleging gross negligence, negligence, nuisance, and RCW 64.40.020[10] violations.[11] The Fishburns claimed that TPCHD and PALS "negligently inspected, reviewed, permitted, endorsed, and approved the design, development and construction" of the property's septic system. CP at 9. The Fishburns also claimed that TPCHD and PALS were "grossly negligent in failing to issue the bulkhead exemption that they had promised to the Fishburns." CP at 9. Additionally, the Fishburns' claim for nuisance alleged that TPCHD's and PALS's "actions in authorizing and permitting the development and construction of unsuitable septic drain fields, a faulty incomplete drainage system, and inadequate foundation, . . . interfered with the Fishburns' right to possess and enjoy their [p]roperty." CP at 10. TPCHD and PALS moved for summary judgment based on the public duty doctrine, which the trial court granted, dismissing the Fishburns' claims.

¶18 The Fishburns unsuccessfully moved for reconsideration based on "newly discovered material evidence," "the lack of reasonable inferences from the evidence to justify the decision," "and the failure of the decision to do substantial justice." CP at 478. The Fishburns appeal the order granting summary judgment to TPCHD and PALS and the denial of their reconsideration motion.

---

[9] In his declaration, Daniel stated that his property was actually worth a negative amount but the parties stipulated to the $2,000 value "to ensure the property w[ould] not be lost from the tax rolls." CP at 136.

[10] The Fishburns' RCW 64.40.020 claim alleged damages based on PALS's contacts with the Fishburns after the Fishburns purchased the property and discovered the failed system, essentially mirroring their claim under the special relationship exception to the public duty doctrine.

[11] The Fishburns' first amended complaint does not assert a regulatory taking claim or United States Constitution's Fifth and Fourteenth Amendments violations. On appeal, the Fishburns appear to have abandoned their RCW 64.40.020 claim because they did not submit any argument relating to that claim. Thus, we do not address it.

## ANALYSIS

### I. PUBLIC DUTY DOCTRINE

¶19 The Fishburns first argue that the trial court erred in granting TPCHD and PALS's summary judgment motion and dismissing the negligence, gross negligence, and nuisance claims based on its finding that no exception to the public duty doctrine applied. Specifically, the Fishburns contend that (1) the legislative intent exception imposes a duty on TPCHD and PALS based on chapter 70.118 RCW and chapter 8.36 Pierce County Code (PCC), (2) the failure to enforce exception applies because TPCHD and PALS had actual knowledge of a PCC 8.36.110 violation and they failed to implement corrections under RCW 70.118.030(2) during the septic system construction and approval in 2004 when Euroway installed it, and (3) the special relationship exception imposed a duty on PALS because PALS's representatives provided express assurances to the Fishburns when the Fishburns discovered the failed septic system. TPCHD and PALS assert that they owed no duty to the Fishburns under the public duty doctrine and no exception applies. We affirm the trial court's summary judgment order because the public duty doctrine bars the Fishburns' action against TPCHD and PALS and no exception applies.

### A. Summary Judgment Standard of Review

¶20 We review a summary judgment order de novo, performing the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). We consider "the facts and the inferences from the facts in a light most favorable to the nonmoving party." *Jones*, 146 Wn.2d at 300.

¶21 Summary judgment is appropriate where "the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Jones*, 146 Wn.2d at 300-01; CR 56(c). "A material fact is one upon which the

outcome of the litigation depends." *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). The initial burden is on the moving party to show there is no issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this initial burden, then "[t]he nonmoving party must set forth specific facts showing a genuine issue and cannot rest on mere allegations." *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989); CR 56(e).

## B. Public Duty Doctrine

¶22 Our Supreme Court has held that

> [t]he threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general. This basic principle of negligence law is expressed in the "public duty doctrine". Under the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one)."

*Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) (citation omitted) (quoting *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 303, 669 P.2d 468 (1983)).

¶23 "The policy underlying the public duty doctrine is that legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability." *Taylor*, 111 Wn.2d at 170. "The existence of a duty is a question of law." *Taylor*, 111 Wn.2d at 168.

## C. Exceptions to the Public Duty Doctrine

¶24 There are four exceptions to the public duty doctrine: (1) legislative intent, (2) failure to enforce, (3) the

rescue doctrine, and (4) a special relationship. *Cummins v. Lewis County*, 156 Wn.2d 844, 853 n.7, 133 P.3d 458 (2006). If one of the exceptions applies, the governmental entity owes a duty to the plaintiff as a matter of law. *Cummins*, 156 Wn.2d at 853. The Fishburns contend that the legislative intent, failure to enforce, and special relationship exceptions apply and, thus, the trial court erred in granting TPCHD's and PALS's summary judgment motions.

¶25 The Fishburns appear to allege that the legislative intent and failure to enforce exceptions apply to TPCHD's and PALS's actions before the Fishburns purchased the property, namely, during the property's septic system preparation and installation by Euroway. The Fishburns also contend that PALS's conduct after the Fishburns purchased the property created a duty to the Fishburns under the special relationship exception.

### 1. Legislative Intent Exception

¶26 The public duty doctrine's legislative intent exception applies when the statute or regulation that establishes a governmental duty expressly identifies and protects a particular and defined class of persons. *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 930, 969 P.2d 75 (1998). "If the legislative intent exception applies, a member of the identified class may bring a tort action against the governmental entity for its violation of the statute." *U.S. Oil Trading, LLC v. Office of Fin. Mgmt.*, 159 Wn. App. 357, 363, 249 P.3d 630 (2011), *petition for review filed*, No. 85616-8 (Wash. Feb. 11, 2011).

¶27 When Washington courts have identified a specific duty of care under the legislative intent exception, they have found that the applicable statute expressly focuses on the protection of a specific class of individuals. *See, e.g., Yonker v. Dep't of Soc. & Health Servs.*, 85 Wn. App. 71, 79-80, 930 P.2d 958 (1997) (duty of care arises from RCW 26.44.010, which declares the chapter's purpose to safeguard the welfare of abused and neglected children); *Donaldson v. City of Seattle*, 65 Wn. App. 661, 667-68, 831

P.2d 1098 (1992) (duty of care arises from RCW 10.99.010's stated purpose " 'to assure the victim of domestic violence the maximum protection from abuse' " (emphasis omitted)). *But see Ravenscroft*, 136 Wn.2d at 929 (regulations referring to recreational boating are primarily aimed at protecting the public, not just members of a particular class consisting of those who participate in recreational boating); *Burnett v. Tacoma City Light*, 124 Wn. App. 550, 563, 104 P.3d 677 (2004) (statute empowering cities to take actions necessary to combat local disasters evidences intent to protect " 'the people of the state,' " rather than a particular group of individuals (emphasis omitted) (quoting RCW 38.52.020(1)).

¶28 In *Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978), our Supreme Court held that a widow of a man who died in a Seattle hotel fire could bring a negligence claim against the city of Seattle based on its failure to enforce building, housing, and safety codes. The applicable ordinance expressly stated that it applied to "the health, safety, morals or welfare of *the occupants of such buildings* and of the *public.*" *Halvorson*, 89 Wn.2d at 677 (second emphasis added). The court stated that "[t]he Seattle Housing Code is an ordinance enacted for the benefit of a specifically identified group of persons as well as, and in addition to, the general public." *Halvorson*, 89 Wn.2d at 677. Because the housing code was enacted for the health, safety, morals, and welfare of the building occupants, as well as the public, the public duty doctrine applied. *Halvorson*, 89 Wn.2d at 677. Conversely, here, the statute, chapter 70.118 RCW, and ordinance, chapter 8.36 PCC, upon which the Fishburns rely, do not expressly apply to a "specifically identifi[able] group of persons as well as, and in addition to, the general public." *Halvorson*, 89 Wn.2d at 677.

### a. Chapter 70.118 RCW

¶29 Despite the Fishburns' contention to the contrary, chapter 70.118 RCW of the public health code shows only

the intent to benefit the people of the State of Washington in general. The Fishburns rely on the general provision covering "on-site sewage disposal systems" as "evidence of legislative intent to create a special duty toward individuals" in chapter 70.118 RCW. RCW 70.118.010's legislative declaration states:

> The legislature finds that over one million, two hundred thousand persons in the state are not served by sanitary sewers and that they must rely on septic tank systems. The failure of large numbers of such systems has resulted in significant health hazards, loss of property values, and water quality degradation. The legislature further finds that failure of such systems could be reduced by utilization of nonwater-carried sewage disposal systems, or other alternative methods of effluent disposal, as a correctional measure. Waste water volume diminution and disposal of most of the high bacterial waste through composting or other alternative methods of effluent disposal would result in restorative improvement or correction of existing substandard systems.

The Fishburns contend that the specifically identified group of persons in RCW 70.118.010 is the "one million, two hundred thousand persons" who rely on septic tank systems. But the legislature's declaration focuses on reducing the possibility of septic system failure, minimizing the adverse effects of failed septic systems through the use of alternative means of handling waste disposal, and correcting existing substandard systems.

¶30 The minimization of "significant health hazards, loss of property values, and water quality degradation" benefits all persons who may be affected by failed septic systems through exposure to noxious or dangerous substances, a reduction in their property values, or loss of use of water sources. RCW 70.118.010. While septic tank owners may benefit from the statute, we disagree with the Fishburns and hold that chapter 70.118 RCW, unlike the Seattle ordinance that expressly stated that it applied to "the health, safety, morals or welfare of the *occupants of such buildings* and of the *public*," does not expressly iden-

tify a particular and defined class of benefitted persons but, rather, the general public who may be affected by failed septic systems if they are not corrected. *Halvorson*, 89 Wn.2d at 677 (second emphasis added). Thus, chapter 70.118 RCW does not establish a governmental duty owed solely to septic tank owners that is an exception to the public duty doctrine. *See Ravenscroft*, 136 Wn.2d at 930.

### b. Chapter 8.36 PCC

¶31 The Fishburns also argue that chapter 8.36 PCC[12] establishes a duty PALS owes them. They contend that "their claims are based on the provisions relating specifically to on-site sewage disposal systems that have been enacted primarily to protect those who are—as [the Fishburns] were—dependent on such systems, and only secondarily to protect the general public from known potential hazards." Br. of Appellant at 29. But the Fishburns fail to point to any specific language in PCC 8.36.110 that establishes a governmental duty or that expressly identifies and protects a particular and defined class of persons. *Ravenscroft*, 136 Wn.2d at 930. Under RAP 10.3(a)(6), we will not consider arguments not supported by citation to legal authority and we will not comb the record to find support for an appellant's argument. Thus, the Fishburns' argument, that the legislative intent exception imposes a duty on TPCHD and PALS as an exception to the public duty doctrine, fails.

### 2. Failure To Enforce Exception

¶32 Next, the Fishburns contend that the failure to enforce exception imposes a duty on TPCHD and PALS.

---

[12] PCC 8.36.110 states:

On-site sewage disposal systems shall be installed on lots, parcels, or tracts that have a sufficient amount of area with proper soils in which sewage can be retained and treated properly on-site. In this regard, the Board of Health shall establish the maximum allowable density and minimum lot sizes for future development proposals. The Board shall also establish guidelines to set such limits.

They rely on RCW 70.118.030(2)[13] and again on PCC 8.36.110 to support this argument. The public duty doctrine's failure to enforce exception states:

> "[A] general duty of care owed to the public can be owed to an individual where [1] governmental agents responsible for enforcing statutory requirements [2] possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and [3] the plaintiff is within the class the statute intended to protect."

*Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 531, 799 P.2d 250 (1990) (alterations in original) (quoting *Honcoop v. State*, 111 Wn.2d 182, 190, 759 P.2d 1188 (1988)). The plaintiff bears the burden of establishing each element of the exception and courts construe this exception narrowly. *Atherton*, 115 Wn.2d at 531. The statute must create a mandatory duty to take specific action to correct a violation, as such a duty does not exist if the statute vests the public official with broad discretion. *Forest v. State*, 62 Wn. App. 363, 369, 370, 814 P.2d 1181 (1991).

¶33 Neither RCW 70.118.030(2) nor PCC 8.36.110 creates a mandatory duty to take specific action to correct a septic system violation. The Fishburns do not argue that PCC 8.36.110 creates a duty to correct a violation. But regarding RCW 70.118.030(2), they state, "TPCHD failed to comply with its obligations under RCW 70.118.030(2) to 'implement corrections.' " Br. of Appellant at 32.

¶34 The Fishburns argument is without merit because RCW 70.118.030(2) explicitly states that implementing corrections is discretionary. There is no specific action required to correct a violation when standards for implementing corrections are at the discretion of the government

---

[13] RCW 70.118.030(2) states:

Discretionary judgment will be made in implementing corrections by specifying nonwater-carried sewage disposal devices or other alternative methods of treatment and effluent disposal as a measure of ameliorating existing substandard conditions. Local regulations shall be consistent with the intent and purposes stated in this section.

agent and, thus, there is no duty to the individual. *Forest,* 62 Wn. App. at 369; *see also Donohoe v. State,* 135 Wn. App. 824, 849, 142 P.3d 654 (2006); *Smith v. City of Kelso,* 112 Wn. App. 277, 284, 48 P.3d 372 (2002). We hold that the trial court did not err in finding that the failure to enforce exception did not apply and that there was no public duty doctrine exception that imposed a duty on TPCHD and PALS owed to the Fishburns.

### 3. Special Relationship Exception

¶35 Next, the Fishburns allege that the trial court erred in dismissing all their claims on summary judgment because the public duty doctrine's special relationship exception applied to their gross negligence claim against PALS for PALS's conduct "in failing to issue the bulkhead exemption." CP at 9. The Fishburns argue that their contacts with PALS, "in connection with emergency repairs to their [p]roperty required by the failure of their septic system," "establish[ed] an actionable special relationship between [the Fishburn]s and PALS." Br. of Appellant at 33-34.

¶36 Under the special relationship exception, a governmental entity is liable for negligence when there is (1) direct contact between the public official and injured plaintiff, (2) the public official gives express assurance to the injured plaintiff, and (3) the plaintiff justifiably relies on such express governmental assurance. *Babcock v. Mason County Fire Dist. No. 6,* 144 Wn.2d 774, 786, 30 P.3d 1261 (2001). An express assurance occurs " 'where a direct inquiry is made by an individual and incorrect information is clearly set forth by the government, the government intends that it be relied upon and it is relied upon by the individual to his detriment.' " *Babcock,* 144 Wn.2d at 789 (quoting *Meaney v. Dodd,* 111 Wn.2d 174, 180, 759 P.2d 455 (1988)).

¶37 The Fishburns state that Daniel's "numerous contacts" with PALS's personnel,

in which they gave him conflicting information, assured him they would work with him, promised him an exemption and

expedited permits, then changed their minds about working with him, about the exemption and permits, about whether or not [the Fishburns] had to file an[ ] administrative appeal, and even about with whom [Daniel] could and could not speak,

create a special relationship. Br. of Appellant at 33-34. This argument also fails.[14]

¶38 The Fishburns do not address the necessary elements of their special relationship claim.[15] Moreover, they have not pointed to evidence that the Fishburns' desired exemption or bulkhead expansion could have cured the septic system failure. Nor do they point to any express assurance by a PALS employee on which the Fishburns justifiably relied to their detriment, including any evidence that they actually applied for a permit or exemption, even though Aleshire and Chase informed them of the proper procedure and timeline necessary to do so.

¶39 Furthermore, the record fails to demonstrate that, even if the Fishburns had applied for exemptions or permits and PALS had expedited all of the Fishburns' requests, the property could be saved from ultimately being declared uninhabitable if the house were not relocated, an option that the Fishburns chose not to pursue. Thus, we affirm the trial court's finding that no public duty doctrine exception arose through a special relationship between PALS and the Fishburns.

¶40 Moreover, the record shows that TPCHD informed the Fishburns that they needed a thorough inspection of the septic system before purchase "to ensure that the septic system [wa]s functioning properly and that it complie[d] with all permitting requirements prior to transfer of own-

---

[14] Daniel appealed PALS's violation notice and stop work order through the proper administrative process and our record on appeal does not include resolution of the Fishburns' appeals; no issue is raised on appeal about any such resolution; and, thus, any issues arising from PALS's stop work order or violation notices are not properly before us.

[15] See RAP 10.3(a)(6); Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

ership." CP at 82. The record also shows that both TPCHD and PALS attempted to assist the Fishburns in addressing the septic system failure that occurred in 2007, following the Bolens' occupancy of the premises during 2006 and 2007 and the Fishburns' occupancy after purchase. When it became clear that correction of the system was not feasible, the county required vacation of the premises to protect the Fishburns and the general public from the consequences of the failed septic system. Thus, even if an exception to the public duty doctrine applies, TPCHD and PALS did not violate any duty imposed.

¶41 The claimed exceptions to the public duty doctrine do not apply to the Fishburns' claims. Accordingly, TPCHD and PALS owed no duty to the Fishburns, and the trial court properly granted TPCHD's and PALS's summary judgment motion dismissing the Fishburn's claims.

## II.  Reconsideration Motion

### A. Standard of Review

¶42 "Motions for reconsideration are addressed to the sound discretion of the trial court and a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion." *Wilcox v. Lexington Eye Inst.*, 130 Wn. App. 234, 241, 122 P.3d 729 (2005). An abuse of discretion exists only if no reasonable person would have taken the view the trial court adopted, the trial court applied the wrong legal standard, or it relied on unsupported facts. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010).

¶43 In asking the trial court to reconsider its ruling, the litigant must "identify the specific reasons in fact and law as to each ground on which the motion is based." CR 59(b). "Under CR 59(a)(4), reconsideration is warranted if the moving party presents new and material evidence that it could not have discovered and produced at trial." *Wagner Dev., Inc. v. Fid. & Deposit Co. of Md.*, 95 Wn. App. 896, 906, 977 P.2d 639 (1999). If the evidence was available but not

offered until after the opportunity passed, the party is not entitled to submit the evidence. *Wagner*, 95 Wn. App. at 907.

## B. CR 59 Reconsideration Motion

¶44 On February 16, 2010, the Fishburns filed their reconsideration motion based on (1) newly discovered material evidence, CR 59(a)(4); (2) the lack of reasonable inferences from the evidence to justify the decision, which was contrary to law, CR 59(a)(7); and (3) the failure of the decision to do substantial justice, CR 59(a)(9). On appeal, the Fishburns argue that the trial court abused its discretion by (1) denying their reconsideration motion based on new evidence that demonstrated the failure to enforce exception applied and (2) incorrectly applying the legislative intent and failure to enforce exceptions.[16] The Fishburns state that they "presented newly-discovered evidence showing that the TPCHD inspector who had ostensibly inspected the final installation of the septic system on [the Fishburns'] [p]roperty in fact falsified his inspection report, and approved the system's installation based on 'as-built' drawings that did not then exist." Br. of Appellant at 38.

¶45 The Fishburns fail to argue, both in their reconsideration motion and on appeal, how the allegedly newly discovered evidence would change the trial court's determination that the public duty doctrine bars their claims and, thus, we need not consider it. *Bohn v. Cody*, 119 Wn.2d 357, 368, 832 P.2d 71 (1992) (appellate court will not consider inadequately briefed argument); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by citation to the record or authority will not be considered); RAP 10.3(a)(6). Even if we were to consider the newly presented evidence, it would not change the above analysis.

¶46 We hold that the trial court did not err in dismissing the Fishburns' claims based on exceptions to the public

---

[16] We resolved this issue in section I of this opinion and do not further discuss it.

duty doctrine, nor did it abuse its discretion in denying the Fishburns' motion for reconsideration.

¶47 Affirmed.

Worswick, A.C.J., and Quinn-Brintnall, J., concur.

Review denied at 172 Wn.2d 1012 (2011).