# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GARY W. ALEXANDER and DIANE M. )
ALEXANDER, husband and wife, )
          )
     Appellants, )
          )
       v. )
          )
CAPITAL ONE, N.A.; CHEVY CHASE )
BANK, F.S.B.; BISHOP, WHITE, )
MARSHALL & WEIBEL, P.S.; )
MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC., aka )
MERS; FIRST AMERICAN TITLE )
INSURANCE COMPANY; CHICAGO )
TITLE CO.; U.S. BANK, N.A., as )
Trustee for Chevy Chase Funding, LLC, )
Mortgage-Backed Certificates, Series )
2007-2 Trust; CHEVY CHASE )
FUNDING LLC, Mortgage-Backed )
Certificates, Series 2007-2 Trust; )
CREDIT SUISSE SECURITIES (USA), )
LLC, )
          )
     Respondents. )
_____ )

No. 71952-1-I
(consol. with No. 72350-2-I)

DIVISION ONE

ORDER GRANTING MOTION
FOR RECONSIDERATION,
WITHDRAWING OPINION, AND
SUBSTITUTING OPINION

The respondents, Capital One, N.A. and MERS, have filed a motion for

reconsideration of the opinion filed September 21, 2015. Appellants have not

filed a response. The court has determined that said motion should be granted

and that the opinion filed on September 21, 2015 shall be withdrawn and a

substitute unpublished opinion be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; it is further

No. 71952-1-I (consol. with No. 72350-2-I)/2

ORDERED that the opinion filed on September 21, 2015 is withdrawn and a substitute unpublished opinion shall be filed.

DATED this 30th day of November, 2015.

Dwyer, J.

Leach, J.

Becker, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GARY W. ALEXANDER and DIANE M. ALEXANDER, husband and wife,

Appellants,

v.

CAPITAL ONE, N.A.; CHEVY CHASE BANK, F.S.B.; BISHOP, WHITE, MARSHALL & WEIBEL, P.S.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS; FIRST AMERICAN TITLE INSURANCE COMPANY; CHICAGO TITLE CO.; U.S. BANK, N.A., as Trustee for Chevy Chase Funding, LLC, Mortgage-Backed Certificates, Series 2007-2 Trust; CHEVY CHASE FUNDING LLC, Mortgage-Backed Certificates, Series 2007-2 Trust; CREDIT SUISSE SECURITIES (USA), LLC,

Respondents.

No. 71952-1-I
(consol. with No. 72350-2-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 30, 2015

DWYER, J. — Gary and Diane Alexander lost their property in a nonjudicial foreclosure sale. They then sued their lender and other entities for wrongful foreclosure, fraud, negligence, slander of title, declaratory relief and violations of the deeds of trust act (DTA), chapter 61.24 RCW, and the Consumer Protection Act, chapter 19.86 RCW. The superior court dismissed the Alexanders'

complaint on summary judgment and awarded respondents attorney fees and costs under the deed of trust, RCW 4.84.185, and CR 11. We affirm.

I

In March 2007, the Alexanders signed an Adjustable Rate Note (Note) acknowledging a $3 million loan from Chevy Chase Bank (Chevy Chase) and promising to pay back that amount plus interest. The note was secured by a deed of trust on the Alexanders' property. The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns."

In 2009, Chevy Chase merged with Capital One, N.A. (Capital One). In October of that year, the Alexanders stopped making payments on their loan.

On March 23, 2012, a Capital One employee authorized to sign documents on behalf of MERS assigned the deed of trust to Capital One. Capital One then appointed Bishop, White, Marshall & Weibel, P.S. (Bishop White) as the successor trustee under the deed of trust.

On May 9, 2012, Bishop White sent a notice of default to the Alexanders, who had not made a loan payment for 32 consecutive months. When the Alexanders did not cure the default, Bishop White notified them that their property would be sold at a nonjudicial foreclosure sale.

The Alexanders filed a pro se complaint for wrongful foreclosure but did not seek to enjoin the sale.

On November 30, 2012, Capital One purchased the property at the foreclosure sale and subsequently moved for summary judgment on the Alexanders' pro se complaint.

In April 2013, attorney J.J. Sandlin advised Capital One's counsel that he was assisting the Alexanders with their lawsuit, that the Alexanders had filed for bankruptcy, and that an automatic stay was in effect.

On July 30, 2013, while summary judgment on the Alexanders' pro se suit was still pending, Sandlin filed a second complaint on behalf of the Alexanders for wrongful foreclosure, fraud, slander of title, negligence, criminal profiteering, and violations of the DTA and the Consumer Protection Act. The complaint alleged, among other things, that the defendants fraudulently manipulated the nonjudicial foreclosure statute, that the note and deed of trust were securitized, and that the foreclosing entities were not holders of the original note and lacked standing to enforce it.

The complaint rested in part on the declarations of two alleged expert witnesses—Michael Wood and Dr. James Kelley. Wood stated in his declaration that he was "a mortgage document examiner." He listed his examiner qualifications as 20 years of experience in the mortgage industry, ownership of a company called "DocAnalysis," and the fact that he "[s]tudied under" a forensic document examiner and "had the benefit of his knowledge and guidance for three years." Wood stated that the Alexanders' loan "was likely" securitized and "likely" placed "into the Chevy Chase . . . MBS Certificates Series 2007-2" trust. He

believed the assignment of the deed of trust from MERS to Capital One and the subsequent appointment of a successor trustee were invalid.

Dr. Kelley described himself as "a computer expert" with a Ph.D. in electrical and computer engineering. He had 30 years' experience working with military and commercial computer systems and used "computer graphics" and "a variety of image-processing technique[s] to test the authenticity of documents." He alleged that he examined signatures on "scans of documents that purport to be the [Alexanders'] original loan documents," including the "Construction / Permanent Loan Note Addendum," "Adjustable Rate Note" and "Prepayment Penalty Addendum" documents. Kelley concluded the documents were not the originals.

In August 2013, the Alexanders voluntarily dismissed their pro se complaint. They later voluntarily dismissed their claims against Bishop White in their remaining complaint.

Capital One and MERS then moved for summary judgment. They supported the motion with declarations alleging that Capital One possessed the original note and that the note had not been securitized. They argued that the Alexanders lacked admissible evidence to create issues of fact on the authenticity of the note and whether it had been securitized. Specifically, they pointed to deficiencies in the qualifications and declarations of Michael Wood and Dr. Kelley. With respect to Dr. Kelley, they submitted a 2013 federal district court

ruling declining to pre-qualify him as an expert in forensic document analysis. The federal court concluded that Dr. Kelley

> has no training or education in the area, his experience is extremely limited, and the sources of his knowledge are mostly unidentified. In addition plaintiff has yet to establish that Dr. Kelley's methodology comports with that generally utilized by forensic document analysts . . . . Absent a proper foundation for the admission of his testimony, the Court declines to pre-qualify Dr. Kelley as an expert in forensic document analysis.

A second federal district court concluded that Dr. Kelley had "no education or training in handwriting analysis or forensic document examination," that "none of his prior work experience involved document examination," and that he was "not qualified to testify as an expert" under Federal Rule of Evidence 702. The court also concluded that even if Dr. Kelley could be qualified as an expert witness, there was no evidence that his methodology was reliable or accepted in the scientific community. Dr. Kelley admitted in a deposition in that case that "his methods are new and that he is the only expert in this field that he is aware [of]."

The superior court struck the declarations of Wood and Dr. Kelley. The court concluded that Wood was not qualified as an expert in securitization and that his declaration was "pure speculation" and legal opinions. The court noted that Wood's inadmissible speculation that the loan had been securitized in a specific trust was contradicted by admissible evidence to the contrary. In addition, the court noted that Wood's declaration was not properly signed and did not comply with General Rule 30.

The court also struck Dr. Kelley's first declaration, stating that the Alexanders "failed to show that [he] qualifies as an expert in forensic document analysis or that [his] methodology is generally accepted among the relevant scientific or technical community." The court did not consider a second declaration from Dr. Kelley filed the day before the summary judgment hearing. In addition to being untimely, the second declaration was not properly signed and suffered the same foundational defects that prompted the court to strike Kelley's first declaration.

The court also implicitly rejected the Alexanders' claim that they were entitled to an evidentiary "Frye"[1] hearing regarding the methodology underlying Dr. Kelley's opinions. In opposing that claim, Capital One's counsel argued that the Alexanders had to first meet their burden on summary judgment, and that it was "within [the court's] discretion to rule on summary judgment that the expert declaration is not competent . . . ." The court implicitly rejected the Alexanders' position when it granted summary judgment without holding a separate Frye hearing.

The court ultimately ruled in favor of Capital One and MERS, stating in part:

> So, even when I look at this in the light most favorable to the nonmoving party, there still needs to be admissible evidence. Here the admissible evidence leads me to the conclusion that . . . Capital One . . . has the note. I don't see a basis to make a finding that it's counterfeit, and I don't see a basis to send this to trial. I'm granting the summary judgment.

---

[1] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

The court subsequently awarded respondents $79,865.26 in attorney fees and costs under CR 11, RCW 4.84.185, and the attorney fee provision in the deed of trust. The court entered the following pertinent findings and conclusions:

## I. FINDINGS OF FACT

. . . .

6. Plaintiffs filed their first lawsuit against Capital One and MERS on November 21, 2012.

7. Plaintiffs were made aware of the fact that Capital One owned the Note and that the Note had not been securitized when defendants filed an affidavit of a Capital One representative in support of their motion for summary judgment in January 2013 in the 2012 lawsuit.

8. On July 30, 2013, attorney J.J. Sandlin filed the second lawsuit against defendants on behalf of plaintiffs. The Complaint included a claim that the DOT was "void and of no further force and effect," and plaintiffs sought title to the Property. Mr. Sandlin and plaintiffs ignored the evidence presented in the first lawsuit and failed to make a reasonable inquiry into whether evidence existed to rebut the evidence presented by defendants before plaintiffs filed the second Complaint on July 30, 2013.

. . . .

10. Throughout both lawsuits, plaintiffs and Mr. Sandlin conducted no discovery or other meaningful post-filing investigation.

. . . .

12. Plaintiffs' opposition to defendants' motion for summary judgment focused on the opinions of their alleged "experts" and on whether "global assignments" of deeds of trust are valid, even though Capital One obtained plaintiffs' Loan through a merger and not an assignment. Plaintiffs made no attempt in their opposition to establish a prima facie case for any of their seven causes of action, even though each of them was addressed in detail in defendants' motion.

13. The day before the hearing on defendants' motion for summary judgment, plaintiffs untimely filed a motion under CR 56(f) to attempt to delay.

. . . .

15. Plaintiffs also filed the following, with the assistance of their counsel Mr. Sandlin, for the improper purpose of causing delay:

a. Plaintiffs admitted that they filed for bankruptcy in order to prevent eviction. They filed for bankruptcy one business day before the scheduled hearing on defendants' summary judgment motion, resulting in cancellation of the hearing.

b. Plaintiffs repeatedly claimed that Capital One did not own the Note and that the Note had been securitized, but made no investigation and conducted no discovery to determine whether their claims were correct.

c. Plaintiffs named one expert (Lori Gileno) and encouraged defendants to incur substantial fees deposing this expert, only to rely on the opinions of different experts in their response to summary judgment and label Gileno a "consultant" during oral argument.

d. Plaintiffs filed a motion for continuance the day before the hearing on defendants' motion for summary judgment, even though the purported basis for the motion (the need for the original DOT) had been apparent for a month.

e. Plaintiffs' summary judgment opposition was based on experts who were unqualified and engaged in junk science, as evidenced by the fact that the Court excluded both of plaintiffs' experts from consideration.

f. Plaintiffs also spent considerable time arguing about whether the signatures on various original documents were genuine when, in fact, the plaintiffs admitted in the first lawsuit signing the Note and they attached a copy to their Verified Complaint, and thus whether plaintiffs signed the Note was not in dispute and whether Capital One possessed the original Note was not a material fact.

g. Plaintiffs signed a Warranty Deed and participated in the recording of numerous fraudulent documents on the title of the Property in an effort to cloud title and cause delay in the eviction. Defendants spent substantial time investigating the fraudulent title documents.

h. Defendants expended time and costs preparing a Joint Motion voiding the fraudulent title documents pursuant to an agreement with Mr. Sandlin, but Mr. Sandlin failed to provide comments on the Joint Motion and it was never filed.

16. Plaintiffs have benefitted from their own delay in an amount exceeding $900,000 for the four years and seven months that have elapsed since they defaulted on the Note and have continued to reside at the Property without making Loan payments.

. . . .

II. CONCLUSIONS OF LAW

. . . .

21. The Complaint was filed by Mr. Sandlin on plaintiffs' behalf even though the Complaint was not well grounded in fact because the Note was owned by Capital One and the Loan was not securitized.

22. . . . [E]ven had the Loan been securitized, securitization does not discharge a promissory note, invalidate a Deed of Trust or change the relationship of the parties under Washington law.

. . . .

25. Mr. Sandlin did not conduct a reasonable inquiry into the factual and legal basis of the claims in the Complaint, because if he had he would have known that (1) Capital One owned the Note; (2) the Note had not been securitized; and (3) even if it had been securitized, Capital One would still be entitled to enforce the Note.

26. The entirety of plaintiffs' lawsuit against defendants was frivolous and advanced without reasonable cause because it could not be supported by any rational argument on the law or facts . . . .

. . . .

29. Mr. Sandlin and plaintiffs are hereby sanctioned for filing the Complaint in violation of CR 11 in the amount of the reasonable attorneys' fees and costs incurred by defendants.

The court entered judgment for the fees and costs against the Alexanders and their counsel. The Alexanders appeal.

II

We review a summary judgment order de novo, engaging in the same inquiry as the trial court. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Lybbert, 141 Wn.2d at 34. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Lybbert, 141 Wn.2d at 34. Mere allegations or conclusory statements of fact unsupported by evidence

are not sufficient to establish a genuine issue of fact. Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989). Nor may the nonmoving party rely on speculation or argumentative assertions that unresolved factual issues remain. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

Initially, we note that the Alexanders' brief on appeal does not comply with the Rules of Appellate Procedure. Despite the clear requirements of RAP 10.3(a)(5), 10.3(a)(6), and 10.4(f),[2] the brief does not contain a single citation to the record. The record in this appeal contains nearly two thousand pages of clerk's papers. In these circumstances, counsel's complete failure to cite to the record is an egregious violation of the rules and is fatal to the appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 819, 828 P.2d 549 (1992).[3]

But even if the Alexanders had complied with the RAP, their arguments would not warrant relief. They contend summary judgment was improper because an issue of fact exists as to whether Capital One had "standing to nonjudicially foreclose." Specifically, they argue that the declarations of Michael

---

[2] RAP 10.3(a)(5) requires references to the record for each factual statement in a party's statement of the case. RAP 10.3(a)(6) requires arguments "together with citations to legal authority and references to relevant parts of the record."

[3] See also Mills v. Park, 67 Wn.2d 717, 721, 409 P.2d 646 (1966) ("We are not required to search the record for applicable portions thereof in support of the plaintiffs' arguments."); Fishburn v. Pierce County Planning & Land Servs. Dep't, 161 Wn. App. 452, 468, 250 P.3d 146 (2011) (courts will not comb the record to find support for appellant's arguments); In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) ("If we were to ignore the rule requiring counsel to direct argument to specific findings . . . and to cite to relevant parts of the record as support for that argument, we would be assuming an obligation to comb the record with a view toward constructing arguments for counsel . . . . This we will not and should not do.").

Wood and Dr. Kelley[4] created fact questions regarding the authenticity of the note and deed of trust, and that the court erred in declaring their testimony inadmissible without holding a separate evidentiary hearing. We disagree.

Under the DTA, a trustee must have proof that the beneficiary has the right to foreclose before it can hold a nonjudicial foreclosure sale. RCW 61.24.030(7)(a). The act provides that "[a] declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection." RCW 61.24.030(7)(a). Here, the record indicates that, prior to foreclosure, the trustee received a beneficiary declaration from Capital One stating that it was the holder of the Alexanders' note. And Capital One manager John Baxter stated in his declaration that Capital One acquired the Alexanders' note and deed of trust when it merged with the original lender, Chevy Chase, and that "Capital One is the current holder of the original Note and the Deed of Trust."[5] Baxter further stated that the loan "was never securitized, whether through the Chevy Chase Funding LLC,

---

[4] Although the Alexanders also point to the deposition testimony of Lori Gileno, they never mentioned her testimony in their response to summary judgment and affirmatively abandoned it at the hearing, telling the court that while they originally "thought we were going to use [Gileno] as an expert witness," they "went with Michael Wood instead of Lori Gileno because we felt that . . . his opinions were more precise and on point." Gileno's declaration is thus not listed among the documents the court considered on summary judgment.

The Alexanders also point to Gary Alexander's declaration, stating that he "unequivocally testified that his signature on the purported [original] documents was not an original signature, because he always signed in blue ink as a business practice . . . ." Brief of Appellant at 3. But no such allegations appear in the declaration considered by the court on summary judgment.

[5] In addition, the Trustee's Deed recited that "Capital One, N.A. being then the holder of the indebtedness secured by said Deed of Trust, delivered to said Trustee a written request directing said Trustee to sell the described property . . . ."

Mortgage-Backed Certificates, Series 2007-2 Trust or through any other securitization trust." This evidence carried Capital One's initial burden on summary judgment.

In response, the Alexanders relied on the declarations of Michael Wood and Dr. Kelley, but the superior court struck their testimony as inadmissible. Contrary to the Alexanders' assertions, the superior court did not err in striking the declarations.

Generally, expert testimony is admissible if the expert is "'qualified as an expert by knowledge, skill, experience, training, or education,'"[6] relies on generally accepted theories in the scientific community, and would be helpful to the trier of fact. Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 352, 333 P.3d 388 (2014) (quoting ER 702). The court "must find that there is an adequate foundation so that an opinion is not mere speculation, conjecture, or misleading. It is the proper function of the trial court to scrutinize the expert's underlying information and determine whether it is sufficient to form an opinion on the relevant issue. Johnston–Forbes, 181 Wn.2d at 357. If the expert's opinion rests on novel scientific evidence, it must also satisfy the Frye standard. State v. Gregory, 158 Wn.2d 759, 829-30, 147 P.3d 1201 (2006), overruled on other

---

[6] ER 702 states:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

grounds by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014). Expert

testimony is admissible under Frye if:

> "(1) the scientific theory or principle upon which the evidence is based has gained general acceptance in the relevant scientific community of which it is a part; and (2) there are generally accepted methods of applying the theory or principle in a manner capable of producing reliable results."

Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176

Wn. App. 168, 175, 313 P.3d 408 (2013) (quoting State v. Sipin, 130 Wn. App.

403, 414, 123 P.3d 862 (2005)), review denied, 179 Wn.2d 1019 (2014). We

review evidentiary rulings made in conjunction with a summary judgment motion

de novo. Taylor v. Bell, 185 Wn. App. 270, 285, 340 P.3d 951 (2014), review

denied, 183 Wn.2d 1012 (2015).

Wood's and Kelley's declarations simply do not meet the requirements of

Frye and/or ER 702 and 703. Neither declaration demonstrated the requisite

expert qualifications. Wood's declaration also contained inadmissible

speculation and legal opinions, and Kelley's declaration failed to demonstrate

general acceptance of his methodology in the scientific community. The court

did not err in striking the declarations.

Without citing pertinent authority, the Alexanders contend they were

"entitled to an evidentiary hearing to prove the admissibility of their expert's

testimony." Br. of Appellant at 12. We need not consider arguments

unsupported by authority. Cowiche Canyon, 118 Wn.2d at 809. Furthermore,

we recently sustained a summary judgment that was based on the inadmissibility

of the nonmoving party's expert opinions and that was entered without holding a Frye hearing. Lake Chelan Shores, 176 Wn. App. at 174-79. In Lake Chelan Shores, as in this case, the moving party pointed to the absence of evidence demonstrating the admissibility of expert testimony, and the nonmoving party failed to produce such evidence. 176 Wn. App. at 179. The superior court did not err in granting summary judgment without holding a Frye hearing. Cf. Madura v. BAC Home Loans Servicing, LP, 593 Fed. Appx. 834 (11th Cir. 2014) (court did not abuse its discretion in denying a hearing on the admissibility of expert testimony where summary judgment submissions failed to meet the standards for admissibility on their face).

Next, the Alexanders contend summary judgment was improper because Capital One "cannot rely upon the 'merger' of Chevy Chase Bank with [Capital One] to conclude it is the holder of the original note and [Deed of Trust]." Br. of Appellant at 7. They argue that "[t]he 'global assignment' of deeds of trust from Chevy Chase Bank to Capitol One . . . does not logically allow [Capital One] to assert preemption of the Washington Deeds of Trust Act." Br. of Appellant at 7-8. This argument is meritless.

Capital One does not allege preemption of the act or reliance on a "global assignment" of deeds of trust. Rather, Capital One argues, and the Alexanders do not dispute, that "[a]s a matter of corporate law, Capital One acquired all rights in the Note when Chevy Chase was merged into Capital One." Br. of Resp'ts at 17. And more fundamentally, as noted above, Capital One submitted

unrebutted evidence that it possessed the original note when it foreclosed. It therefore had standing to enforce the note and deed of trust regardless of the validity of the assignment.[7] See Trujillo v. Nw. Trustee Services, Inc., 181 Wn. App. 484, 496-502, 326 P.3d 768 (2014), reversed in part, 2015 WL 4943982 (Wash. Aug. 20, 2015); In re Butler, 512 B.R. 643, 656 (Bankr. W.D. Wash. 2014) (under the deed of trust act, "a security interest follows the obligation it secures," and this is true whether the deed of trust was assigned properly or at all); In re Jacobson, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) (holding that "[i]n Washington, only the holder of the obligation secured by the deed of trust is entitled to foreclose. . . . '[T]ransfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter'" (alteration in original) (quoting Carpenter v. Longan, 83 U.S. 271, 21 L. Ed. 313 (1872))); Ukpoma v. U.S. Bank Nat'l Ass'n, No. 12-CV-0184, 2013 WL 1934172, at *3

---

[7] The same reasoning defeats the Alexanders' argument that the document purporting to assign the deed of trust to Capital One was ineffective because the assignee, MERS, "did not hold the Alexanders' note, and therefore it had no power to assign the [deed of trust] even if the assigning 'officer' could be construed to be an agent of Chevy Chase Bank." Br. of Appellant at 9. Furthermore, Capital One responds, and the Alexanders do not dispute, that borrowers are third parties to such assignments and therefore lack standing to challenge them. Borowski v. BNC Mortg., Inc., No. C12–5867, 2013 WL 4522253, at *5 (W.D. Wash. Aug. 27, 2013) ("[B]orrowers, as third parties to the assignment of their mortgage (and securitization process), cannot mount a challenge to the chain of assignments."); Andrews v. Countrywide Bank, NA, No. C15-0428, 2015 WL 1487093, at *3 (W.D. Wash. April 1, 2015) ("[A] borrower generally lacks standing to challenge the assignment of its loan documents unless the borrower shows that it is at a genuine risk of paying the same debt twice."). And even if the Alexanders' had standing to challenge the assignment, their argument is unavailing because the validity of MERS' assignment did not depend on whether MERS was the actual holder of the note. In Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 106, 285 P.3d 34 (2012), our Supreme Court held that because it was "likely true" that "lenders and their assigns are entitled to name [MERS] as their agent," nothing in Bain "should be construed to suggest an agent cannot

(E.D. Wash. May 9, 2013) ("[B]y virtue of being in possession of the note, U.S. Bank is the lawful owner. Its right to receive payment on the note does not depend upon any assignment of the note from MERS.").

Last, citing RCW 62A.3-104, the Alexanders contend Capital One was not "a legitimate 'holder'" of the note because the note was not an *unconditional* promise to pay a debt and was therefore not a negotiable instrument. But as Capital One correctly points out, the note contains a clear promise "to pay Three Million . . . Dollars . . . plus interest." The Alexanders fail to identify a single condition to that promise in the note. The Alexanders also fail to acknowledge or apply the criteria for an unconditional promise set forth in RCW 62A.3-106. Accordingly, their contention fails.

III

The Alexanders and their counsel challenge the superior court's award of $79,865 in attorney's fees and sanctions to Capital One. As noted above, the court's award rested on three alternative bases: the frivolous action statute, RCW 4.84.185, the attorney fee provision in the deed of trust, and CR 11.[8] The

---

represent the holder of a note." 175 Wn.2d at 106; Andrews, 2015 WL 1487093, at *3. ("MERS may act as an agent of the note-holder.").

[8] CR 11(a) provides in pertinent part:
The signature of a party . . . constitutes a certificate . . . that the party . . . has read the pleading, motion, or legal memorandum, and that to the best of the party's . . . knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) **it is well grounded in fact;** (2) **it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law;** (3) **it is not interposed for any improper purpose,** such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If a pleading, motion, or legal

No. 71952-1-I/17 (consol. with No. 72350-2-I)

Alexanders only challenge the court's reliance on CR 11. We review a trial court's imposition of CR 11 sanctions for abuse of discretion. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 338-39, 858 P.2d 1054 (1993). The trial court knows the tenor of the litigation and is in the best position to determine whether facts exist to impose sanctions. Miller v. Badgley, 51 Wn. App. 285, 300-01, 753 P.2d 530 (1988). On the briefing presented, we cannot say the court abused its discretion.

The portions of the Alexanders' brief pertaining to CR 11 contain no references to the record and no assignments of error to or discussion of any of the superior court's many findings and conclusions. The Alexanders also offer no response to Capital One's extensive arguments and discussion of the court's findings and conclusions. This briefing is inadequate and precludes review. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument."); Donner v. Blue, 187 Wn. App. 51, 65, 347 P.3d 881 (2015) (same).

In any event, the court's unchallenged findings are verities, Humphrey Indus., Ltd. v. Clay St. Assocs., LLC, 176 Wn.2d 662, 675, 295 P.3d 231 (2013),

---

memorandum is signed in violation of this rule, the court . . . may impose upon the person who signed it . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

(Emphasis added.) This rule authorizes sanctions for baseless filings or filings made for an improper purpose. Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219-20, 829 P.2d 1099 (1992).

- 17 -

and those findings support the court's conclusions of law.[9] In addition, the Alexanders' principal argument against CR 11 sanctions—i.e., that they reasonably relied on their "experts" opinions—ignores the glaring deficiencies in the experts' qualifications and declarations.

The Alexanders fail to demonstrate that the court abused its discretion in imposing sanctions under CR 11.

Subject to their compliance with RAP 18.1, we grant Capital One's and MERS's request for attorney fees and costs on appeal under the fee provision in the deed of trust.

Affirmed.

We concur:

_____
_____

_____

---

[9] While the Alexanders argue that courts "should not consider Rule 11 sanctions if an applicable and appropriate remedy is available by statute or under other Rules," they cite no authority supporting that proposition. Br. of Appellant at 17. We need not consider arguments that are not supported by authority. Cowiche Canyon, 118 Wn.2d at 809.