[No. 13016-5-II. Division Two. July 1, 1991.]

JUDITH V. FOREST, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, *Respondent.*

---

*Rodney B. Ray, Margullis, Luedtke & Ray,* and *Mary J. Johnson,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Michael P. Lynch, Assistant,* for respondent.

ALEXANDER, J. — Judith Forrest and others appeal a summary judgment dismissing their negligence action against the State of Washington. They contend that the Pierce County Superior Court erred in concluding that the State had immunity from suit for the actions of its parole officers and that it had no duty to plaintiffs. We affirm.

The facts of this case are not in dispute. Darrell Rose, who had been convicted of manslaughter in the state of Oregon, was placed on parole by the Oregon Board of Parole. The State of Washington's involvement with Rose began when Rose requested residential placement with his sister in Tacoma. Washington conducted an "interstate placement investigation" and, as a result, a report was submitted to the Washington State Department of Corrections that Rose be accepted for supervision in Washington pursuant to the interstate parole compact. *See* RCW 9.95.270. The report focused on Rose's "extensive criminal record" and his need to receive alcohol treatment and restrict his nomadic lifestyle. The Washington Department of Corrections agreed to accept supervision of Rose and he was released to this state in March 1983. Rose was initially supervised in this state by Alice Tate, an employee of the State Department of Corrections. He was later supervised by Patty Tabet, another Department employee.

Between March 1983 and July 1984, Rose's parole officer permitted him to leave Washington and go to Oregon, Alaska, California and Idaho, ostensibly to obtain employment. Rose did not obtain employment despite what his parole officer thought was his sincere effort to do so. In January 1984, Rose was arrested in Seattle for allegedly assaulting a woman. The charges were dropped because the complaining witness did not appear at trial.

In April 1984, in response to a request from Oregon to assess the possibility for early termination of Rose's parole, Tabet declared Rose "unsupervisable". She

recounted his travels and attempts to obtain employment and advised the Oregon authorities of the assault charge and the resulting dismissal. She said, however, that "aside from his 'wanderlust nature,' he has not violated his parole conditions."

At about the time Tabet was preparing her report, Rose developed an intimate relationship with his neighbor, Judith Forest. Rose spent a great deal of time at Forest's house, and they exchanged love letters. At one point, they applied for a marriage license. According to Forest, the relationship ended after he allegedly beat and raped her. Forest also alleges that Rose raped her daughter and his two nieces. The State was not aware of these alleged incidents until after they occurred.

Forest and others filed an action against the State of Washington and other defendants, alleging that the State had knowledge of facts that should have caused it to take steps to secure Rose's confinement or, at least to restrict his activities, in order to prevent the type of conduct that resulted in the injuries to them. The State denied liability and moved for summary judgment. Its motion was granted, the trial court concluding that the State had discretionary immunity and that the "failure to enforce" exception to the public duty doctrine did not apply.

■ "A motion for summary judgment is properly granted if there is no genuine issue of fact as to any material element necessary to support a claimed cause of action." *Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 32, 491 P.2d 1058 (1971). In reviewing a summary judgment, this court engages in a de novo review and it must make the same inquiry as did the trial court, looking to the pleadings, depositions, admissions, and affidavits to determine if there are any genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Because the facts are not in dispute, this case was ripe for summary judgment.

Forest concedes that the decision to parole is a discretionary determination for which the State and its agents

have immunity. *See Noonan v. State*, 53 Wn. App. 558, 561, 769 P.2d 313, *review denied*, 112 Wn.2d 1027 (1989). She argues, however, that the decisions regarding supervision and revocation of parole are ministerial acts for which immunity does not attach. *See Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 255, 407 P.2d 440 (1965). She contends that the corrections officer's decisions were in violation of the rules and regulations promulgated by the Board of Prison Terms and Paroles and were not the kind of basic policy decisions that invoke immunity.

The State responds that in order to protect the quasi-judicial decision-making process of the parole board, the State must have immunity from liability for a parole officer's performance in preparing investigative reports and recommendations. *Noonan v. State, supra; Tobis v. State*, 52 Wn. App. 150, 758 P.2d 534 (1988) (judicial immunity).[1] It contends that in order to ensure that reports are unbiased, those preparing the reports and recommendations must not be fearful of liability. Furthermore, it argues, the decision not to report minor technical violations must be protected because otherwise parole officers would consistently recommend revocation in order to protect themselves and the State from liability for any future crime that might be committed by a parolee.

We need not determine whether the State has immunity from liability because, even if the State has no immunity,[2] any duty owed to Forest is a public duty and, consequently, there is no liability on the part of the State.

---

[1]The State seems to confuse the adjudicatory process of a parole revocation hearing (quasi-judicial) with the decision to grant parole which is not part of the "judicial" function of the court. *See January v. Porter*, 75 Wn.2d 768, 773-74, 453 P.2d 876 (1969) (executive branch bears full responsibility for parole). *But see* RCW 9.95.001 (Board of Prison Terms and Paroles functions transferred to the superior court effective June 30, 1992).

[2]We note that the recent decision of *Babcock v. State*, 116 Wn.2d 596, 809 P.2d 143 (1991), denying caseworkers absolute immunity, also prevents the State from using whatever qualified immunity may exist.

■ Under the public duty doctrine, liability may not be imposed upon the State for a public employee's negligent conduct unless it is shown that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one)." (Citations omitted.) *Taylor v. Stevens Cy.*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988).

Forest argues that the public duty doctrine should not bar recovery here because the "failure to enforce" exception to the public duty doctrine has application to the facts of this case. *Bailey v. Forks*, 108 Wn.2d 262, 265-66, 737 P.2d 1257, 752 P.2d 523 (1987). She argues, in support of that theory, that the State possessed actual knowledge of statutory violations by Rose and nevertheless failed to take corrective action.

■ The failure to enforce exception to the public duty doctrine states that a general duty of care owed to the public can be owed to an individual where (1) governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, (2) those agents fail to take corrective action despite a statutory duty to do so, and (3) the plaintiff is within the class the statute intended to protect. *Bailey*, at 268.

In *Bailey*, the Supreme Court held that the town of Forks owed a duty to a woman injured by a drunk driver shortly after a Forks police officer ordered the obviously intoxicated person to leave the area of a tavern and observed him getting behind the wheel of a pickup truck. It concluded that all three elements of the exception to the public duty doctrine were present. First, the governmental agent (the police officer) responsible for enforcing RCW 70.96A.120(2)[3] and RCW 46.61.515[4] had actual

---

[3]RCW 70.96A.120(2) requires that a police officer take into custody a publicly incapacitated individual.

[4]RCW 46.61.515 prohibits driving a motor vehicle under the influence of alcohol.

knowledge of the violation because he had talked with the driver and knew he was intoxicated. Second, despite the driver's obviously intoxicated condition, the officer failed to take him into custody and instead allowed him to take the wheel of the pickup truck. Finally, the injured woman, a passenger on the motorcycle, was within the class of persons the statute was intended to protect because both RCW 70.96A.120(2) and RCW 46.61.515 clearly were intended to protect people from the dangers associated with intoxicated drivers.

Forest argues that corrections officer Tabet knew that Rose was in violation of specific conditions of his parole,[5] to wit: that Rose was required to obtain gainful employment, maintain a singular residence, and participate in alcohol treatment. She alleges that Rose did not observe the conditions and that Tabet took no corrective action, despite knowledge of his failings. The State, relying on Tabet's report to the Oregon parole board, contends that Rose was not in violation of his parole conditions aside from his "wanderlust nature". We conclude that even if Rose was in technical violation of the general conditions of parole that apply to all parolees, the facts of which were known to Tabet, Forest cannot establish that the State's corrections officers had a mandatory duty to take specific action. *McKasson v. State*, 55 Wn. App. 18, 27, 776 P.2d 971 (1989); *Honcoop v. State*, 111 Wn.2d 182, 190, 759 P.2d 1188 (1988).

 Corrections Department employees are responsible for "preparation of progress reports" and "guidance and supervision". RCW 72.04A.080. Unlike the situation in *Bailey*, where the police officer was required to take specific action, there is no statute here that mandates that specific corrective action be taken.

In the *McKasson* case, the court explicitly held that an enforceable duty to act requires a mandatory duty to take specific action. *McKasson*, 55 Wn. App. at 25. The court

---

[5]There is no citation to the record where these conditions are listed. RAP 10.3(a)(4) requires a citation to the record for each factual assertion.

did an extensive analysis of a number of "failure to enforce" cases and distinguished situations where the governmental employee had a specific directive to do something from situations where the statute is replete with "mays" and broad discretion is vested in the governmental official. *McKasson*, 55 Wn. App. at 25.

It does not appear that the State's corrections officers were required to take specific action in this case. Although RCW 72.04A.090 indicates that parole officers "may" arrest for parole violations, Rose's wanderings — which may not even have been a violation of his parole in view of the fact that he had permission — provided unlikely grounds for arrest absent a showing that he had committed some wrongful act during his travels. Thus, unlike *Bailey*, it cannot be said that there is a mandatory duty to take specific action.

Finally, Forest argues that she and the other plaintiffs are within the class of persons the statute is intended to protect. The State responds that a duty to improve public welfare through the parol system is not a duty to protect individual interests.

■ Arguably, parole statutes that provide for the supervision of parolees are intended to protect the public from unrehabilitated convicts. *See January v. Porter*, 75 Wn.2d 768, 453 P.2d 876 (1969) (parole may be rehabilitative but is also risky business for society). However, this function is not the most important consideration. A decision that parole statutes are primarily designed to protect the public would effectively undermine the parole system. The State, in an attempt to limit its liability, would be compelled to reincarcerate parolees for even minor infractions of parole conditions. Clearly, this result would eliminate the beneficial and rehabilitative functions of parole. That is not in the public interest. Parole statutes facilitate the rehabilitative process by providing support and supervision before full release into the community; they are not, in our judgment, primarily intended to protect the public.

Because there is no mandatory action required of parole officers and because the purpose of the parole statutes is not primarily to protect the public the "failure to enforce" exception to the public duty doctrine has no application.

Affirmed.

WORSWICK, C.J., and PETRICH, J., concur.