251 P.3d 270 (2011)
Conrad F. PIERCE, Appellant,
v.
YAKIMA COUNTY, Washington, a governmental entity and political subdivision of the State of Washington, Respondent.
No. 29568-1-III.
Court of Appeals of Washington, Division 3.
May 12, 2011.
*271 Meriwether D. Williams, Kevin James Curtis, Winston & Cashatt, Spokane, WA, for Appellant.
Mark Robert Johnsen, Attorney at Law, Seattle, WA, Lawrence Andrew Peterson, *272 Yakima County Prosecuting Attorney, Yakima, WA, for Respondent.
BROWN, J.
¶ 1 Conrad Pierce appeals the trial court's dismissal under the public duty doctrine of his negligence claims against Yakima County (County). Under the doctrine, the government may not be sued for negligence unless it breaches a duty owed particularly to the plaintiff rather than to the public in general. Mr. Pierce contends the trial court erred in failing to apply the "failure to enforce" and the "special relationship" exceptions to the public duty doctrine. Alternatively, Mr. Pierce contends remaining material facts preclude summary judgment on whether a special relationship has been established. We disagree with Mr. Pierce's contentions, and affirm.

FACTS
¶ 2 In spring 2007, Mr. Pierce contracted to purchase a Yakima home and lease it before closing. Mr. Pierce was responsible to lease or purchase an outside propane tank and the sellers would provide propane supply lines to serve the existing home.
¶ 3 In August 2007, Mr. Pierce applied for a mechanical code permit and a fire code permit to allow installation of a liquid propane storage tank and piping outside the house. Yakima County issued the permits. That month, All American Propane, Inc. (AAP) installed the propane tank, pressure regulator, valves, gauge, piping and propane 60 feet from the home. AAP connected the newly installed piping from the tank to the home without prior approval of the building official. Mr. Pierce called the County the same day to inspect the newly installed tank and its fuel line that was in an open trench leading from the tank to the home. On September 4, 2007, the County Building Inspector Richard Granstrand and Yakima County Deputy Fire Marshal Ronald Rutherford inspected the installation of the propane tank and piping. Mr. Granstrand told Mr. Pierce the propane installation had passed inspection and the piping could be covered in the trench. According to Mr. Pierce, he said, "It looks like everything is done. You are good to go." Clerk's Papers (CP) at 41.
¶ 4 On October 4, 2007, Mr. Pierce installed a section of flexible piping between a valve near the interior wall and the furnace in the house. He opened the gas valve and attempted to ignite the furnace. Unknown to Mr. Pierce, an uncapped gas pipe existed in the attic of the house allowing the gas to escape into the attic and eventually into the living space. The gas exploded, destroying the home and injuring Mr. Pierce. The record is silent regarding any permitting process for the inside piping.
¶ 5 Mr. Pierce sued the home sellers, AAP, and the County for negligence. Yakima County unsuccessfully moved for summary judgment based on the public duty doctrine. Months later, after the other defendants had settled with Mr. Pierce, the County asked the court to clarify its summary judgment denial and identify any remaining factual issues bearing on the County's liability. The court held no issues of material fact remained bearing on the "failure to enforce" exception. The court entered an order summarily dismissing Mr. Pierce's claims against the County, including any claim based on the special relationship exception. The trial court reasoned:
In the present case, the Plaintiff has delineated a number of instances in which the Yakima County building officials either failed to observe violations of the International Residential Code or observed such violations, but took no action. Looking at the proffered facts in the light most favorable to the Plaintiff and without specific reference to the code sections, the evidence could support a finding that at least the following violations were apparent at the time of the inspection: (1) introduction of propane into the system before approval; (2) the use of propane as the testing medium on the leak test; (3) and the connection of the filled storage tank to the house without inquiry as to the integrity of the interior piping. Coffel v. Clallam County, 58 Wash.App. 517, 523, 794 P.2d 513 (1990) [knowledge of facts constituting a violation is sufficient to satisfy second prong of the test], Waite v. Whatcom *273 County, 54 Wash.App. 682, 775 P.2d 967 (1989) ["circumstantial evidence may support a finding of actual knowledge"].
However, the critical issue is not whether there were code violations which were ignored or passed over, but whether the code mandated corrective action by the Building Official.
In the Court's view, these enforcement sections of the applicable code do not create a mandatory duty to take specific action. They are thus inadequate to support application of the failure to enforce exception.
CP at 60, 62.
¶ 6 The Supreme Court denied Mr. Pierce's request for direct review.

ANALYSIS
¶ 7 The issue is whether the trial court erred in summarily ruling the public duty doctrine precluded Mr. Pierce's negligence claims against the County.
¶ 8 When reviewing a trial court's summary judgment ruling, we engage in the same inquiry as the trial court. Halleran v. Nu W., Inc., 123 Wash.App. 701, 709, 98 P.3d 52 (2004). We will affirm a ruling granting summary judgment if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences therefrom are considered in the light most favorable to the nonmoving party. Halleran, 123 Wash.App. at 709-10, 98 P.3d 52. In negligence actions, the determination of whether an actionable duty is owed to a plaintiff represents a question of law reviewed de novo. Cummins v. Lewis County, 156 Wash.2d 844, 852, 133 P.3d 458 (2006). Factual issues may be decided as a matter of law when reasonable minds could reach but one conclusion and when the factual dispute is so remote it is not material. Ruffer v. St. Frances Cabrini Hosp., 56 Wash.App. 625, 628, 784 P.2d 1288 (1990).
¶ 9 Washington waived its sovereign immunity to tort suits in 1967, declaring the State may be liable for damages arising out of its tortious conduct "to the same extent as if [it] were a private person or corporation." RCW 4.96.010(1). However, the threshold determination when such a claim is asserted, as in all negligence actions, is whether a duty of care is owed to the plaintiff asserting the claim. Taylor v. Stevens County, 111 Wash.2d 159, 163, 759 P.2d 447 (1988).
¶ 10 In determining if a duty of care exists when a claim is asserted against the state, Washington courts consider the "public duty doctrine," which requires a showing that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general." Id. (quoting J & B Dev. Co. v. King County, 100 Wash.2d 299, 303, 669 P.2d 468 (1983), overruled on other grounds by Taylor, 111 Wash.2d 159, 759 P.2d 447; Meaney v. Dodd, 111 Wash.2d 174, 759 P.2d 455 (1988)). The doctrine reflects the policy that "legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability." Id. at 170, 759 P.2d 447. The public duty doctrine is a "focusing tool" used to determine whether the state owed a specific duty to a particular individual, the breach of which is actionable, or merely a duty to the "nebulous public," the breach of which is not actionable. Osborn v. Mason County, 157 Wash.2d 18, 27, 134 P.3d 197 (2006) (quoting Taylor, 111 Wash.2d at 166, 759 P.2d 447).
¶ 11 Four circumstances, referred to as "exceptions" exist to the public duty doctrine: (1) where there is a "legislative intent" to impose such a duty, (2) where the state is guilty of a "failure to enforce" a statutory duty, (3) where the government has engaged in "volunteer rescue" efforts, and (4) where a "special relationship" exists between the plaintiff and the state. Donohoe v. State, 135 Wash.App. 824, 834, 142 P.3d 654 (2006); Babcock v. Mason County Fire Dist. No. 6, 144 Wash.2d 774, 786, 30 P.3d 1261 (2001).
¶ 12 First, Mr. Pierce contends the County owed him a duty of care under the "failure to enforce" exception applicable when (1) government agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, (2) a *274 statutory duty exists to take corrective action, (3) the agents fail to take corrective action, and (4) the plaintiff is within the class the statute is intended to protect. Halleran, 123 Wash.App. at 714, 98 P.3d 52; Smith v. State, 59 Wash.App. 808, 814, 802 P.2d 133 (1990); Honcoop v. State, 111 Wash.2d 182, 190, 759 P.2d 1188 (1988).
¶ 13 The exception is narrowly construed. Halleran, 123 Wash.App. at 714, 98 P.3d 52 (citing Atherton Condo. Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co., 115 Wash.2d 506, 531, 799 P.2d 250 (1990)). It applies solely if the relevant statute mandates a specific action to correct a violation. Donohoe, 135 Wash.App. at 849, 142 P.3d 654. Such a mandate does not exist if the government agent has broad discretion regarding whether and how to act. Id.
¶ 14 The County adopted the following state codes: the International Residential Code (2006) (IRC); the International Mechanical Code (2006) (IMC), except standards for liquefied petroleum gas (propane) installations shall be the National Fuel Gas Code (2006) (NFPA 54); the Liquefied Petroleum Gas Code (2004) (NFPA 58); and the International Fire Code (2006) (IFC). Yakima County Ordinance No. 3-2007.
¶ 15 Mr. Pierce argues these fuel and gas codes mandate specific actions by directing the County to notify resident permit holders of noncompliance and to withhold final approval of a fuel system if all tests and inspections have not been done. Specifically, he relies on IRC section R109.1:
For onsite construction, from time to time the building official, upon notification from the permit holder or his agent, shall make or cause to be made any necessary inspections and shall either approve the portion of the construction as completed or shall notify the permit holder wherein the same fails to comply with this code.
CP at 241.
¶ 16 The County responsively argues the IRC vests building officials with discretion to enforce the code but does not place upon them a specific enforcement obligation. It cites IRC section R111.3 which provides that when an official observes a code violation, it "shall have the authority to authorize disconnection," CP at 241, and IRC section R113.2 which provides that the building official "is authorized" to serve a notice of violation or order where a building or structure is in violation of code. CP at 290.
¶ 17 In Campbell v. City of Bellevue, 85 Wash.2d 1, 13, 530 P.2d 234 (1975), our Supreme Court found municipal liability where the city's ordinance required the electrical inspector to sever or disconnect nonconforming lighting systems and he solely warned the homeowner of the wiring but did not disconnect it. Injuries resulted. Id. at 3-4, 530 P.2d 234. Relying on Campbell, the Court in Bailey v. Town of Forks, 108 Wash.2d 262, 268, 737 P.2d 1257 (1987), established the failure to enforce exception and identified the statutory duty to take corrective action as an element of the exception. There, a police officer witnessed an intoxicated man drive away from a bar just before causing an accident that killed one person and seriously injured another. Id. at 264-65, 737 P.2d 1257. The Court found the element satisfied because a statute required a police officer to detain a publicly incapacitated individual. Id. at 269, 737 P.2d 1257. The statute read, "[A] person who appears to be incapacitated by alcohol and who is in a public place or who has threatened, attempted, or inflicted physical harm on another, shall be taken into protective custody by the police or the emergency service patrol." Id. at 269, n. 1, 737 P.2d 1257 (citing RCW 70.96A.120(2)).
¶ 18 Later cases clarified that the statutory duty to take corrective action element required a specific directive to the governmental employee as to what should be done. See McKasson v. State, 55 Wash.App. 18, 25, 776 P.2d 971 (1989); Forest v. State, 62 Wash.App. 363, 369, 814 P.2d 1181 (1991); Ravenscroft v. Water Power Co., 87 Wash. App. 402, 415, 942 P.2d 991 (1997), aff'd, 136 Wash.2d 911, 969 P.2d 75 (1998); Smith v. City of Kelso, 112 Wash.App. 277, 284, 48 P.3d 372 (2002).
¶ 19 In McKasson, no such directive was found in the securities act statutes or the associated regulations. McKasson, 55 Wash. App. at 25, 776 P.2d 971. "Instead, the *275 statutes and the regulations are replete with `mays,' and throughout the statutes, broad discretion is vested in the Director." Id. In Forest, the element was not met because RCW 72.04A.090 indicates that parole officers "may" arrest for parole violations, but arrest is not mandatory. Forest, 62 Wash. App. at 370, 814 P.2d 1181. In Ravenscroft, this court focused on whether the statutes and ordinances at issue used the word "may" or "shall." Ravenscroft, 87 Wash.App. at 415-16, 942 P.2d 991. There, "[t]he statutes and ordinances at issue ... [did] not contain the language necessary to invoke the failure to enforce exception to the public duty doctrine." Id. at 416, 942 P.2d 991. In Smith, Division Two of this court reasoned even though the ordinance at issue required the city engineer to prepare standards, using the language "shall," the language was not specific enough to enforce. Smith, 112 Wash. App. at 284, 48 P.3d 372. The duty at issue, to prepare standards, was within the city engineer's discretion. Id. But the statutory duty in Smith was not an enforcement duty. See id.
¶ 20 Here, the trial court concluded this case was unlike Campbell and Bailey. The "enforcement sections of the applicable code do not create a mandatory duty to take specific action. They are thus inadequate to support application of the failure to enforce exception." CP at 62. We agree with the trial court. The statute does not provide a specific directive to the governmental employee as to what should be done. The statute merely vests discretion in the inspector in this situation. The IRC gives the inspector authority to authorize disconnection and serve a notice or order when a violation is observed. See IRC §§ 111.3, 113.2.
¶ 21 Moreover, the County's permits related solely to connections outside Mr. Pierce's home and no violation was observed outside. No in-home inspection was contemplated in the permits issued. One month after the County inspection, Mr. Pierce improperly attempted on his own to connect the inside furnace to the propane tank. Unfortunately, the inside piping was defective, but the record does not illuminate what the permitting process may have been for the existing inside piping system. Further, Mr. Pierce merely argumentatively asserts the County had actual knowledge of the defect and a corresponding duty, but argumentative assertions on remote facts do not raise material fact issues. Ruffer, 56 Wash.App. at 628, 784 P.2d 1288. Reasonable minds could reach but one conclusion on this point. Id. Therefore, we do not further consider the parties' actual knowledge arguments.
¶ 22 The parties disagree about the application of Waite v. Whatcom County, 54 Wash.App. 682, 775 P.2d 967 (1989), to their case. Though it utilized the failure to enforce exception established in Bailey, including the corrective action element, the Waite court did not specifically address the corrective action element. Id. at 686-88, 775 P.2d 967. Also, when the Waite opinion was published, case law had not yet clarified that corrective action meant specific directive. In any event, there is no reference to the statutory language at issue in the Waite case. As the trial court here noted, the duty may have been conceded by the parties in that case. Therefore, Waite is inapplicable to this case as far as that element is concerned.
¶ 23 Second, Mr. Pierce contends the special relationship exception to the public duty doctrine applies. The exception imposes a duty of care upon the state where (1) a direct contact between a public official and the plaintiff occurs, (2) the public official provides express assurances, which (3) give rise to justifiable reliance on the part of the plaintiff. Donohoe, 135 Wash.App. at 835, 142 P.3d 654; Taylor, 111 Wash.2d at 166, 759 P.2d 447. An "express assurance" occurs where an individual makes a direct inquiry and the government clearly sets forth incorrect information in response. Babcock, 144 Wash.2d at 789, 30 P.3d 1261.
¶ 24 The County correctly argues Mr. Pierce made no direct inquiry regarding the fuel system as it existed inside the home. The County correctly reasons Mr. Granstrand could not have responded to such an inquiry because he knew nothing about the piping inside the house. Mr. Pierce argues he made a direct inquiry to the County inspectors regarding the use of the propane system and Mr. Granstrand told him he was *276 "good to go." Br. of Appellant at 43. Again, reasonable minds could reach but one conclusion on this point; Mr. Granstrand came to inspect the outside propane tank installation that was the subject of the relevant permits. We are asked to argumentatively and speculatively extend the proposition that because the propane tank installation was good to go, the inside piping was inferably good to go. At best Mr. Pierce asserts Mr. Granstrand gave his general approval for the propane system; this is not close to a specific inquiry about the interior piping that Mr. Pierce candidly acknowledges Mr. Granstrand never saw let alone inspected. The record is silent on the inside piping permitting process.
¶ 25 Because we are bound by Supreme Court decisions adhering to the public duty doctrine, we decline Mr. Pierce's request to establish new law in this settled area.
¶ 26 Affirmed.
WE CONCUR: KORSMO, A.C.J., and SWEENEY, J.