IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| EMMA A. SUTTON, a single person, | ) | No. 40070-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF AGRICULTURE, | ) | |
| a Department of the State of Washington; | ) | |
| and MICAH RICHARD COOPER and | ) | |
| JANE DOE COOPER, husband and wife, | ) | |
| | ) | |
| Respondents. | ) | |

MURPHY, J. —Emma Sutton was severely injured in a workplace accident at a

cherry packaging warehouse when she entered a bin lift machine that then activated

through an automated sensor, trapping Sutton and crushing her pelvis. The injury took

place during a pre-sanitary inspection, after a Department of Agriculture commodity

inspector, Micah Cooper, identified cherry debris beneath the machine that needed to

be removed. Sutton filed suit, claiming her injuries were proximately caused by the

negligence of the inspector, as well as the Department under the doctrine of respondeat

superior. The trial court found as a matter of law that the Department and its inspector

did not owe Sutton a common law duty of care and dismissed her claims on summary

judgment. We agree and affirm.

No. 40070-1-III
*Sutton v Dep't of Agric.*

FACTS

*Background*

Our recitation of facts is presented in the light most favorable to the nonmoving

party on summary judgment, Emma Sutton. *See Keck v. Collins*, 184 Wn.2d 358, 370,

357 P.3d 1080 (2015).

Emma Sutton, at the time a college student, secured a summer job at Western

Sweet Cherry Group, LLC. The hiring and onboarding process was informal, with

Sutton receiving limited training or instruction beyond being told to do specific tasks.

Sutton did not recall being given "any sort of documentation about the machinery of the

warehouse," any instruction about the machinery, or any information on the warehouse's

safety protocols. Clerk's Papers (CP) at 140, 146-50. Her work in the cherry packing

warehouse consisted primarily of painting floors, cleaning bins, and cleaning conveyor

belts.

The Department of Agriculture is statutorily obligated to conduct phytosanitary[1]

inspections, sometimes referred to as "'pre-sanitary'" inspections, at agricultural packing

facilities pursuant to chapter 15.17 RCW. CP at 32, 293. These inspections help ensure

---

[1] "Phytosanitary" is defined as "of, relating to, or being measures for the control of plant diseases especially in agricultural crops." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/phytosanitary (last visited July 16, 2025).

2

the fair and orderly marketing of fruits and vegetables "for the purpose of protecting the immediate and future health, safety, and general welfare of the citizens of this state." RCW 15.17.010.

The Department "performs audit and inspection services . . . under a 'cooperative agreement' with the United States Department of Agriculture's Agricultural Marketing Service (USDA/AMS). Under USDA/AMS rules, [the Department] provides these services as a "federal-state inspection agency." WAC 16-390-240. Federally licensed inspectors, who have undergone extensive training, perform the phytosanitary inspections on behalf of the Department. *See* CP at 99-100, 293. Inspections are customarily done via a walk-through of the facility, in which the inspector is accompanied by a warehouse employee, with the inspector identifying deficiencies. The warehouse does not "fail" an inspection, as it typically comes into compliance by addressing any deficiencies during the inspection. CP at 32, 293-94. There are inherent urgencies in these walk-throughs such that inspectors strive to fulfill regulatory duties and respect the warehouse's time-sensitive objectives to resolve all issues during the walk-through.

For a cherry packing warehouse, a deficiency that would be noted during a pre-sanitary walk-through inspection would be discarded cherries on the packing line. Therefore, during the walk-through, inspectors will point out places where cherries need to be removed to come into compliance.

On the day Sutton was injured, she was instructed by the warehouse manager to accompany the inspector on the pre-sanitary inspection. Sutton's manager directed her to clean up any leftover cherries identified by the inspector and "to do whatever the inspector told [her] to do." CP at 241; *see also* CP at 219-20, 245. Sutton introduced herself to Department's inspector, Micah Cooper, stating she would accompany him on the walk-through. Cooper had previously conducted several inspections at this particular cherry packing warehouse and had "worked with lots of various cherry packing facilities." CP at 230. He had never before met Sutton, however. Cooper did not know anything about Sutton's background or training, and was unaware that this was the first time Sutton had participated in an inspection.

During this particular inspection, Cooper first identified cherries that needed to be removed from a pool of water and Sutton immediately removed the cherries using a pool skimmer. Cooper next identified cherries underneath a bin lifter that needed to be cleared. According to Cooper, he did not tell Sutton (1) how to clean up the cherries, (2) what consequences would follow if she did or did not remove the cherries, or (3) a timeframe in which the cherries needed to be removed. Cooper's deposition testimony was that his general words to Sutton were that "those [cherries] would need to be cleaned up." CP at 105. Sutton's deposition testimony, relative to her interaction with Cooper, included a recitation of what she told her parents as to what happened close in time to

4

the incident. Sutton was confident that the inspector told her "'You forgot some cherries. Go ahead and pick those up.'" CP at 163. According to Sutton, Cooper did not tell her how to clean up the cherries, and she did not ask the inspector how to clean them up, she simply "went right in to go pick them up by hand," which was in accord with what her manager directed. CP at 163.

Sutton said that she went to the machine to remove the cherries by "straddling and laying down, so one leg on each side and [her] torso and chest were resting on a bar." CP at 160-61. At that point the bin lifter began moving and Sutton "felt the first pressure on [her] back." CP at 161. As the machine continued to move and trapped her, Sutton "started screaming ridiculously" and felt "excruciating pain," CP at 241, and "a big, almost, release in [her] pelvis" and felt as though it had "snapped in half." CP at 82. A warehouse employee activated an emergency switch that powered off the machine, and first responders arrived shortly thereafter.

*Procedural history*

In 2020, Sutton initiated a personal injury action in Yakima County Superior Court against Micah Cooper, individually and as part of a marital community, and the Department, alleging general negligence. Sutton alleged in the complaint that her injuries occurred as a direct result of Cooper directing her to remove cherry debris from the dumper intake area under the bin lifter machine. Sutton alleged the Department was

negligent for the acts and/or omissions of its agent, Micah Cooper, under the doctrine of respondeat superior.

After conducting discovery, the Department and Micah Cooper (collectively "the defendants") moved for summary judgment dismissal of Sutton's complaint. The defendants argued that, while there were disputed questions of fact, based on the facts presented they were entitled to judgment as a matter of law because Sutton had failed to establish all the elements necessary to prevail on a negligence claim, specifically duty and proximate cause.

First, the defendants argued they were shielded from liability through the public duty doctrine on the basis that the Department, and Micah Cooper acting as a public official in the scope of performing his duties, had a statutory and regulatory obligation to conduct phytosanitary inspections at agricultural packing facilities pursuant to chapter 15.17 RCW, WAC 16-470-010(7), and WAC 16-470-715. The defendants further argued that Sutton could not establish any of the exceptions to the public duty doctrine.

Second, even if the public duty doctrine did not apply, the defendants argued Sutton's common law negligence claim failed as "Mr. Cooper's duty was to the public as a whole. The purpose of his inspection was to safeguard Washington's food supply for the public at large, not to ensure that food consumed by Ms. Sutton individually was sanitary, and certainly not to guarantee her physical safety in her own workplace, where

[Cooper] was merely a guest." CP at 24. The defendants also argued that even if Sutton's injuries were foreseeable it would not create a duty by the defendants to protect Sutton from harm in her own workplace.

Third, it was the defendants' position that Sutton could not establish that they were the proximate cause of Sutton's injuries, as they did not create any danger, did not place the cherries on the floor, and had no responsibility to train Sutton on latent hazards or how to safely operate machinery in her own workplace. The defendants noted they had no supervisory role over Sutton, and Cooper did not tell Sutton she needed to remove cherries, how to accomplish this, or the timing for such to occur, and did not make a threat as to any consequence if the cherries were not picked up. Therefore, it was argued Sutton had failed to establish that she would not have suffered harm but for any act or omission by Cooper. Additionally, the defendants argued legal cause was lacking on the basis that "'logic, common sense, justice, policy, and precedent'" do not compel liability. CP at 28 (quoting *McCoy v. Am. Suzuki Motor Corp.*, 136 Wn.2d 350, 359-60, 961 P.2d 952 (1998)). It is undisputed that Cooper was aware the machinery was powered on at the time of the inspection. In a declaration submitted in opposition to summary judgment, Sutton indicated that she was directed to pick up cherries under the bin lifter by Cooper. Cooper claims he only pointed out there were cherries that must be picked up, and "did not mention, suggest, or tell Ms. Sutton how to clean it [up]." CP at 295. He also denied

7

mentioning or suggesting to Sutton "any consequences if the debris were not cleared." CP at 295.

The warehouse manager, Craig Harris, confirmed that he had assigned Sutton the task of accompanying the Department's inspector on the walk-through. According to Harris, "Sutton was expected to remedy any issues pointed out by the inspector as they walked through the plant to avoid any delays" in an international shipment of cherries scheduled to go out that same day. CP at 245. According to Sutton, Harris "walked me through the inspection process" and "told me to do whatever the inspector told me to do." CP at 241. Sutton said she felt "pressure[] to make sure the inspection was passed so that the warehouse would be able to pack and ship cherries that day." CP at 241. Sutton also submitted a declaration from Kurt Stranne, a certified safety professional and professional engineer. Stranne offered the following conclusory opinion: "Mr. Cooper was in a position of authority and after he pointed out the deficiency, his expectation was that [Ms.] Sutton would correct the deficiency by gathering the cherries. While directing her actions, Mr. Cooper had a responsibility to not send her into an unsafe area, thereby creating a foreseeable safety hazard." CP at 249.

Sutton argued that the public duty doctrine was not applicable or, in the alternative, that her claim falls within the "special relationship" exception to the doctrine. Sutton framed the issues on summary judgment as being: (1) the defendants owed a duty

of reasonable care not to cause harm to Emma Sutton, and (2) the defendants' breach of that duty was the proximate cause of Sutton's injuries.

The defendants in their reply noted that: (1) no material fact was contested by Sutton, (2) no special relationship existed between the defendants and Sutton, (3) the defendants were not subject to a common law duty to protect Sutton from latent hazards in her own workplace, and (4) Sutton did not establish proximate causation.

After hearing argument of counsel for the parties, the trial court took the matter under advisement. About three weeks later, the court entered an order granting summary judgment to the defendants. Concurrent with its order, the trial court issued a letter explaining the decision. The court agreed with Sutton and found that the public duty doctrine did not apply. It also found the defendants did not owe Sutton a common law duty of care as a matter of law. The trial court concluded:

> I cannot find that the defendants owed a duty of care to [Emma Sutton].
> The defendants only indicated what needed to occur before the inspection
> could be passed. They did not advise or control the timing, the manner,
> or the personnel the employer should use to remove the cherries. The
> defendants did not control whether or not the "bin lifter" was active and
> ready and they did not control any training aspects in regard to Ms. Sutton.

CP at 299.

After unsuccessfully moving for reconsideration, Sutton timely appealed to this court.

9

ANALYSIS

"Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). "The burden is on the party moving for summary judgment to demonstrate there are no genuine disputes as to any material fact." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350, 144 P.3d 276 (2006).

An appellate court engages in de novo review, performing the same inquiry as the trial court, when reviewing an order for summary judgment. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999); *Mountain Park Homeowners Ass'n, Inc. v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). This court views all facts "in the light most favorable to the nonmoving party," including reasonable inferences from the evidence adduced. *Snohomish County v. Rugg*, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002).

To establish actionable negligence, a plaintiff must establish: (1) the existence of a duty owed to the complaining party, (2) a breach of the duty, (3) resulting injury,

and (4) that the breach was the proximate cause of the injury. *Fabre v. Town of Ruston*, 180 Wn. App. 150, 158, 321 P.3d 1208 (2014).

*Public duty doctrine*

The defendants in their summary judgment motion contended Sutton's claims should be barred by the public duty doctrine, with no exception to the public duty doctrine being present. Sutton argues on appeal that the superior court correctly ruled the public duty doctrine does not apply. We agree with Sutton.

Washington abrogated sovereign immunity in 1961 by enacting RCW 4.92.090, which provides, "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." *See also* RCW 4.96.010(1) (eliminating immunity for local governmental entities).

Following the enactment of RCW 4.92.090 and RCW 4.96.010, "the public duty doctrine applies only to claims based on an alleged breach of 'special governmental obligations [that] are imposed by statute or ordinance.'" *Norg v. City of Seattle*, 200 Wn.2d 749, 758, 522 P.3d 580 (2023) (alteration in original) (quoting *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 549, 442 P.3d 608 (2019)). "Therefore, the public duty doctrine is inapplicable to common law negligence claims, even if a governmental

entity is the defendant." *Id.* at 759. "The policy behind the public duty doctrine is that legislation for the public benefit should not be discouraged by subjecting the government to unlimited liability for individual damages." *Donohoe v. State*, 135 Wn. App. 824, 834, 142 P.3d 654 (2006) (citing *Taylor v. Stevens County*, 111 Wn.2d 159, 170, 759 P.2d 447 (1988)).

"'[T]o establish a duty in tort against a governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public.'" *Norg*, 200 Wn.2d at 757 (quoting *Beltran-Serrano*, 193 Wn.2d at 549). If the duty was owed to the public, then the public duty doctrine applies; if the duty allegedly breached was owed to an individual, then the doctrine does not apply. *Id*. at 758. "This is a potentially 'dispositive' issue because if the public duty doctrine applies, the negligence claim must be dismissed for lack of an actionable duty unless there is an applicable exception." *Id*. (quoting *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020)).

Under the public duty doctrine, "the government may not be sued for negligence unless it breaches a duty owed particularly to the plaintiff rather than to the public in general." *Pierce v. Yakima County*, 161 Wn. App. 791, 794, 251 P.3d 270 (2011). Our Supreme Court explained that "[t]he public duty doctrine guides a court's analysis of whether a duty exists that can sustain a claim against the government in tort."

12

*Ehrhart*, 195 Wn.2d 3at 398. "'To establish a duty in tort against a governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public.'" *Id.* (quoting *Beltran-Serrano*, 193 Wn.2d at 549). The public duty doctrine is used "as a focusing tool in order 'to analyze whether a mandated government duty was owed to the public in general or to a particular class of individuals.'" *Id.* (quoting *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 888, 288 P.3d 328 (2012) (Chambers, J., concurring)).

To determine whether the public duty doctrine bars Sutton's claim, as the defendants argue, this court must first identify the duty allegedly breached and determine whether it is based on "a generally applicable statute or an individually applicable common law duty." *Norg*, 200 Wn.2d at 759. Here, the inspector's statutory duty is to ensure quality fruit and vegetable products and to "protect[] consumers from the sale of inferior and misrepresented fruits and vegetables." RCW 15.17.010. The statute was "enacted in the exercise of the police power of this state for the purpose of protecting the immediate and future health, safety, and general welfare of the citizens of this state." *Id.*

But Sutton's cause of action against the defendants is not based on a breach of any statutorily obligated duty or failed inspection leading to poor quality or misrepresented food. Rather, Sutton alleges that the defendants breached their common law duty to refrain from placing her at risk of harm when she went into a machine, that the inspector

13

knew was powered on, to clean up cherry debris. Any duty by the defendants was owed

to Sutton individually. Therefore, the public duty doctrine does not apply.

Sutton's claim that the inspector acted negligently by telling her to clean cherries

out of a machine that he knew was powered on could certainly be brought against a

private individual, such as her manager, and the duty to use reasonable care would be

personal, not statutory. If Sutton's manager told her to get into a machine that was

powered on and clean up the cherries, then Sutton's only recourse would be against her

manager through an industrial insurance claim.

*Duty of care*

Sutton argues the trial court erred in its summary judgment dismissal of her

general negligence claim on the basis that Cooper directly engaged with Sutton on an

individualized basis, "instructing her to clean a particular area even though he knew that

she would be exposed to a risk of physical harm." Br. of Appellant at 16.

In a negligence action, the plaintiff must first prove that the defendant owed a duty

of care. *Cummins v. Lewis County*, 156 Wn.2d 844, 852, 133 P.3d 459 (2006). Because a

negligence action cannot be maintained if no duty of care was owed, a threshold question

is whether a duty of care existed. *Ehrhart*, 195 Wn.2d at 396. The existence of a duty is a

question of law. *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984). "Duty is

defined as 'an obligation, to which the law will give recognition and effect, to conform

to a particular standard of conduct toward another.'" *Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 413, 693 P.2d 697 (1985) (quoting W. Prosser, *Torts*, § 53, at 311 (3d ed. 1964)).

The Department's inspector, Micah Cooper, was present at the cherry packing warehouse to conduct the phytosanitary inspection. In performing this work, it was Cooper's job to identify cherry debris that needed to be removed from the processing line for the warehouse to pass inspection and resume operations. Cooper had no choice, control or authority over the employee designated by the warehouse to accompany him on the walk-through. Cooper had no control or ability to know or learn the training or background of the warehouse employee designated to perform the walk-through on behalf of the cherry packing facility. Cooper had no control or authority over the operation of any machine or whether any machine was to be powered on or off, or how to approach, manage, or work with any machine on site. This included the subject bin lifter. Cooper's role was limited to identifying inspection issues that needed to be corrected. In pointing out the cherry debris, Cooper did not control which warehouse employee would address the deficiency, how the employee would address the deficiency, or when the employee would address the deficiency. The trial court correctly found that no duty of care was owed to Emma Sutton by the defendants.

15

*Proximate cause*

"An appellate court may affirm summary judgment on any basis supported by the record." *Anderson v. Grant County*, 28 Wn. App. 2d 796, 803, 539 P.3d 40 (2023), *review granted*, 3 Wn.3d 1018, 556 P.3d 1104 (2024). "[A party] is entitled to argue [on appeal] any grounds in support of the superior court's order that are supported by the record." *McGowan v. State*, 148 Wn.2d 278, 288, 60 P.3d 67 (2002). "[T]his court may consider *any* issues raised by the parties." *Anaya Gomez v. Sauerwein*, 180 Wn.2d 610, 624, 331 P.3d 19 (2014). Both parties in their briefing at the trial court and on appeal raise the issue of proximate causation. Therefore, the issue is before this court.

As an alternative basis for summary judgment, the defendants argued the evidence did not support that any act or omission of Micah Cooper proximately caused Emma Sutton's injuries. Sutton argues the inspector's breach of duty was the actual and proximate cause of her injuries. The defendants argue the evidence does not support that the inspector's actions or inactions caused Sutton's injuries, and as a matter of policy, this court should decline to hold he was the legal cause of her injuries because such a holding would create widespread liability that would chill the performance of regulatory functions.

Even if the defendants owed a duty, we hold the trial court properly dismissed

Sutton's negligence claim as a matter of law because there was no genuine issue of

material fact on proximate cause.

"A 'proximate cause' of an injury is defined as a cause that, in a direct sequence,

unbroken by any new, independent cause, produces the injury complained of and without

which the injury would not have occurred." *Fabrique v. Choice Hotels Int'l, Inc.*, 144

Wn. App. 675, 683, 183 P.3d 1118 (2008). "Proximate cause is composed of both cause

in fact and legal cause." *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 289, 481 P.3d

1084 (2021). "Cause in fact refers to the 'but for' consequences of an act—the physical

connection between an act and an injury." *Id.* (quoting *Hartley v. State*, 103 Wn.2d 768,

778, 698 P.2d 77 (1985)). "Legal causation, on the other hand, rests on policy

considerations as to how far the consequences of [a] defendant's acts should extend. It

involves a determination of whether liability should attach as a matter of law given the

existence of cause in fact." *Hartley*, 103 Wn.2d at 779 (emphasis omitted). "Importantly,

both elements must be satisfied." *Fabrique*, 144 Wn. App. at 683.

As part of the phytosanitary inspection at Western Sweet Cherry Group, Micah

Cooper had to point out the deficiency of cherry debris under the bin lifter. Emma Sutton

argues that had the inspector not identified the cherries under the bin lifter that needed

to be removed, then her injury likely would not have occurred. Even taking all facts in a

light most favorable to Sutton, Cooper's act of telling the assigned warehouse employee what was necessary for the warehouse to come into compliance was not an act that caused Sutton's injury. The inspector's act of stating what needed to be done to pass inspection was not what placed Sutton in harm's path.

The issue of proximate cause typically is a question for the jury, but "'when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion . . . it may be a question of law for the court.'" *Bordynoski v. Bergner*, 97 Wn.2d 335, 340, 644 P.2d 1173 (1982) (quoting *Mathers v. Stephens*, 22 Wn.2d 364, 370, 156 P.2d 227 (1945)). Therefore, the issue of proximate cause may be determined on summary judgment where the evidence is undisputed and only one reasonable conclusion is possible. *Hartley*, 103 Wn.2d at 778.

"While the cause in fact inquiry focuses on a 'but for' connection, legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Meyers*, 197 Wn.2d at 289. Like duty, "[l]egal cause is decided by the court as a question of law." *McCoy*, 136 Wn.2d at 359 (1998). In this instance, the element of proximate causation is not met.

No. 40070-1-III
*Sutton v Dep't of Agric.*

CONCLUSION

We affirm the trial court's summary judgment dismissal of Sutton's complaint.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Cooney, J.

19